BURNHAM & DUGGAN RAILWAY APPLIANCE CO. v. NAUMKEAG ST. RY. CO.

(Circuit Court, D. Massachusetts.  August 22, 1893.)

No. 2,900.

1. PATENTS FOR INVENTIONS—BRACKETS FOR ELECTRIC CONDUCTORS.
   The fourth claim of letters patent No. 418,704, issued January 7, 1880, to John A. Duggan, for improvements in brackets for electric conductors, for "an adjustable collar, provided with means to support guard wire," possesses no element of patentable invention.

2. SAME—OVERCOMING PRESUMPTION OF NOVELTY.
   While a patent is prima facie evidence of novelty and utility, and also of patentable invention, yet this presumption may be overcome by the court's application of the ordinary knowledge and experience required to settle issues of fact.

In Equity.  Bill by Burnham & Duggan Railway Appliance Company against Naumkeag Street-Railway Company for infringement of letters patent No. 418,704, issued January 7, 1890, to John A. Duggan, for improvements in supporting electric conductors. Bill dismissed.

Charles H. Drew, for complainant.

George R. Blodgett, (Bentley & Blodgett, on the brief,) for defendant.

PUTNAM, Circuit Judge.  This case turns on the fourth claim of the patent in suit, which is in the following language:  "The adjustable collar, g, provided with means to support guard wire, substantially as above described."  We find "guard wire" in the singular.  This is undoubtedly a clerical error for the plural, and the court so accepts it.  The claim is briefly expressed, and, so far as the letter is concerned, is very deficient.  Undoubtedly there may be read into it so much of the specifications as shows that the adjustable collar carries a loop, or its equivalent, for the suspension of electric conductors, including trolleys, in connection with systems of electric railways.  In this particular the claim seems to fall within that class where reference may be made to the specifications to supply in a claim what it is plain to every one the claim assumes as existing, rather than within the ordinary class in which it is held that a claim clearly deficient of itself cannot be made good from other parts of the patent.  Seymour v. Osborne, 11 Wall. 516, 547; Day v. Railway Co., 132 U. S. 98, 102, 10 Sup. Ct. Rep. 11.

A portion of the argument proceeds on the theory that the claim embraces as a novelty the device of two guard wires, to be carried in such position over the electric conductor as to protect it; but there is no foundation for this.  All that is said touching the guard wires is incidental.  The specifications state that the invention relates to an improvement in brackets for electric conductors, and nothing found in the claim broadens beyond this.

But while the guard wires in no part contribute to the claimed novelty for which the patent was issued, yet, were it otherwise, the result of the case, for the reasons hereafter stated, would be the same. It may be well to add, however, that if the matter of the guard wires was an important function, the claim would perhaps be held invalid for duplicity.

The history of the alleged invention is given by the patentee, Mr. John A. Duggan, substantially as follows: He states that in 1887 or 1888 he conceived the idea of an electric street railway in the town of Quincy, Mass.; that in the progress of the work it was necessary to obtain permission from local authorities to use the overhead trolley system, and then the projectors met with opposition, based on the claim that injury would result from a contact between the then existing telephone wires and the trolley; that for economical reasons the projectors were obliged to use ordinary crooked poles to support the trolley, instead of straight sawn timber; and that, therefore, it became necessary to design a bracket to meet this condition of things. He further states that, "in order to meet the objections of the telephone company, so far as telephone wires making contact with the trolley wires was concerned, it occurred to me that the trolley wires should be protected by means of guard wires supported by arms on the collar;" and he continues: "For this reason the Quincy brackets, or collars of the brackets, were provided with means for carrying one or more of the guard wires, although the guard wires were never put up." Out of this grew the patent in this case, so far, at least, as concerns the claim in question. The crooked posts were the ordinary resource of economy, and the guard wires the plain result of the necessity of overcoming the opposition described by Mr. Duggan. A collar with a set screw, movable backward and forward on a bracket, is such a common mechanical instrumentality, with such innumerable and varied applications in every department of life, that the court cannot be surprised by the fact that its use occurred to Mr. Duggan when the necessity therefor arose, as it would certainly have occurred to any constructor of ordinary skill. And the same is true with reference to the means of carrying the guard wires, and of moving them to and fro with the trolley wire. For the reasons already stated the court is not called upon to decide whether there was any novelty in the use of two guard wires, or in the determination of their position; but, assuming this to be settled, the court does not hesitate to find that any projector like Mr. Duggan, after selecting the adjustable collar, would also, quite as a matter of course, so support the guard wires that they would move to and fro with the trolley wire, and that a method of effecting this, either in the way which he adopted or in some other, would readily suggest itself to him, or to any other constructor of ordinary skill. Any one curious in that direction will find in Manufacturing Co. v. Cary, 147 U. S. 623, 637, 13 Sup. Ct. Rep. 472, a mass of cases illustrating that there is no inventive faculty in applying such old and well-known devices as are here under con-

sideration to new but analogous uses, where such application would be so readily suggested as in the case at bar.

The court is unable to perceive any element of patentable invention in any thing which this claim properly brings to its attention. While it is aware, as claimed by the complainant, that a patent is prima facie evidence of novelty and utility, and also of patentable invention, yet the case at bar is one among a great mass of instances constantly coming up for judicial determination, which demonstrate that the presumption which this rule affords is sometimes slight, and sometimes renders but little assistance. Certainly it is easily overcome in the case at bar, which the court is called on to determine on bill, answer, and proofs, and to which, therefore, it is authorized to apply the same ordinary knowledge and ordinary experience as may all tribunals, whether juries or judges, required to settle issues of fact. Bill dismissed, with costs for the respondent.