### AMERICAN CAN CO. v. GOLDEE MFG. CO., Inc.

(District Court, E. D. New York. May 25, 1923.)

1. Patents ⬩328—1,316,240, for lunch box, claim 1, held void, and claim 2 valid and infringed.

The Hothersall patent, No. 1,316,240, for a lunch box, claim 1, *held* void, as too broad, in view of the prior art; claim 2 *held* valid for the specific construction therein shown, and infringed by one article made by defendant, but not infringed by another.

2. Patents ⬩112(3)—Failure of Patent Office to consider pertinent references weakens presumption of validity.

Where the Patent Office failed to cite or consider pertinent references, the presumption of validity from grant of the patent is seriously weakened.

3. Patents ⬩238—Infringement not avoided by omission of separable part, to be supplied by purchaser.

Infringement is not avoided by omission of a separable element of the patented combination, which the purchaser can, and is expected to, supply.

In Equity. Suit by the American Can Company against the Goldee Manufacturing Company, Inc. Decree for complainant.

Munday, Clarke & Carpenter, of Chicago, Ill. (John C. Carpenter, of Chicago, Ill., of counsel), for plaintiff.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a suit in equity for infringement of letters patent No. 1,316,240, issued by the United States Patent Office to the American Can Company, the plaintiff, dated September 16, 1919, and the defense is invalidity and noninfringement. The application for said patent was filed by John M. Hothersall, on January 2, 1918, and on the same day an assignment of the invention described in said application from John M. Hothersall to the American Can Company, the plaintiff, with a direction that the patent be issued to it, was duly filed in the Patent Office.

[1] The suit is based on both claims of the patent, numbered 1 and 2, which read as follows:

"1. A lunch box comprising a body, and a cover hinged to the same, said cover being of campanulate form in cross section, a thermos bottle arranged parallel with the hinge of the cover and seated within the upper part of the same and held from sidewise movement by the curved side walls of the cover, and a spring arranged across the lower part of the cover and movably connected with the sides thereof and bearing on the under side of the bottle to press the latter into its said seat.

"2. A lunch box comprising a body, and a cover hinged to the same, said cover being of campanulate form in cross section, a thermos bottle seated within said cover and held from sidewise movement by the curved side walls of the cover, and a spring arranged across said bottle at the inner side thereof and acting to press the bottle toward the top of the cover and into its seat therein, said spring having at one end a pivotal connection with the cover so as to swing on a vertical axis and having at the other end a detachable connection with the cover which connection holds the spring against turning on its pivot, said connection being releasable by pressing the end of the spring upward."

There are three elements in the claims of the patent: (1) A lunch box; (2) a thermos bottle; (3) a spring. The lunch box is required to have a body and cover hinged together and the cover to be campanulate in cross-section.

Plaintiff claims that the thermos bottle may be of any character at all within the claims of the patent, but I do not think that the patent is susceptible of that interpretation, because, as appears by the file wrapper of the patent in suit, the application as first filed contained three claims, and in those numbered 2 and 3 reference was made to the bottle in the following words: "Adapted to extend across beneath a thermos bottle"—and the Examiner said with reference thereto:

"In claims 2 and 3 the bottle should be either brought in directly in positive language as an element of the combination instead of inferentially, or this merely incidental feature should be canceled entirely."

That the applicant accepted the ruling is shown by the new claims he filed, in which the bottle is made an element in claim 1 by the use of the words, "a thermos bottle arranged parallel with the hinge of

the cover and seated within the upper part of the same and held from sidewise movement by the curved side walls of the cover," and in claim 2 by the use of the words, "a thermos bottle seated within said cover and held from sidewise movement by the curved side walls of the cover."

The spring was described in claim 2 in detail by the words:

"A spring arranged across said bottle at the inner side thereof and acting to press the bottle toward the top of the cover and into its seat therein, said spring having at one end a pivotal connection with the cover so as to swing on a vertical axis and having at the other end a detachable connection with the cover which connection holds the spring against turning on its pivot, said connection being releasable by pressing the end of the spring upward."

For this character of spring, in combination with the box and bottle hereinbefore described, it seems to me, if not prevented by the state of the art, a patent might be granted. The spring was described in claim 1 by the words:

"A spring arranged across the lower part of the cover and movably connected with the sides thereof and bearing on the under side of the bottle to press the latter into its said seat."

This claim seems to me to be altogether too broad, because, if sustained, it would not stimulate invention, but monopolize a field much wider than would even be given to a pioneer, and surely no claim can be made that this applicant was a pioneer, as will appear when we consider the prior art.

To give to this claim the broad construction the plaintiff placed thereon would prevent the use of an ordinary metal clip or band to hold the bottle in place, regardless of the shape of the cover, and no such construction can be justified, as there were many thoroughly efficient methods known to the art before plaintiff's patent in suit for holding bottles and other receptacles in place in boxes and covers thereof, such as straps, tapes, trays, metal clips, springs, and hinged and pivoted arms, as will appear in the consideration of the prior art. I therefore believe that claim 1 of the patent in suit cannot be sustained.

The claims in the first application were rejected, and several patents were cited by the Examiner as showing the prior art; but, the applicant having added the bottle as one of the elements, a patent was granted, and under the circumstances the presumption of patentability, so far, at least, as claim 1 is concerned, is very slight. Burnham v. Naumkeag St. Ry. Co. (C. C.) 57 Fed. 651; In re Thomson, 120 O. G. 2756, C. D. 1906, 556, at page 571; Fellows v. National Can Co., 257 Fed. 976, 169 C. C. A. 120.

[2] The Examiner in the Patent Office did not cite the Herold patent, No. 698,015, nor the Smith patent, No. 703,672, and as they were pertinent references, and not considered, the presumption of the validity of claim 1 is seriously weakened. Cordley v. Richardson Corp. (D. C.) 278 Fed. 685, affirmed (C. C. A.) 280 Fed. 515.

Defendant offered nine patents in evidence to show the prior state of the art, all of which were issued by the United States Patent Office, and are as follows: No. 277,653, issued to C. F. Albert, dated May 15, 1883; No. 682,522, issued to W. & J. Boekel, dated Sept. 10, 1901;

No. 698,015, issued to F. Herold, dated April 22, 1902; No. 703,672, issued to J. M. Smith, dated July 1, 1902; No. 1,053,097, issued to J. F. Lamb, dated February 11, 1913; No. 1,061,386, issued to J. F. Lamb, dated May 13, 1913; No. 1,184,075, issued to J. J. Clist, dated May 23, 1916; No. 1,220,159, issued to Labadie & Beers, dated March 20, 1917; No. 1,276,852, issued to G. P. Altenberg, dated August 27, 1918. An examination of these patents in the order of their dates of issue shows the development of the art.

The Albert patent, No. 277,653, shows a pivoted arm y (see Fig. 2) for holding a violin in place. The Boekel patent, No. 682,522, shows a hinged arm E and a lug or hook F (see Fig. 4) for holding surgical instruments in position. The Herold patent, No. 698,015, shows a spring clip L and a hook I (see Fig. 2) for photographic printing frame. The Smith patent, No. 703,672, shows spring clips d and d' (see Fig. 1) for photographic printing frame. The Lamb patents, Nos. 1,053,097 and 1,061,386, show a metal tray e (see Fig. 2) for holding the bottle. The Clist patent, No. 1,184,075, shows a hinged spring arm 18 (see Fig. 1) for holding matches in the cover of a box. The Labadie & Beers patent, No. 1,220,159, shows the idea of using the tapes 33 (see Fig. 1) to hold the plates in place, and at the left-hand side the hinged handle 24 (see Fig. 2) is clearly shown as suitable for holding a vacuum bottle in place.

The Altenberg patent, No. 1,276,852. This patent though issued on August 27, 1918, was applied for on March 9, 1917, and thus antedates the patent in suit (which was applied for on January 2, 1918) by over 10 months, and shows a cover 19 having a curved top 18 conforming to the contour of the bottle 17 (page 1 of Altenberg patent, lines 68–72), and a strap 46, the securing means for the bottle, which was riveted to the top of the cover by means of the rivet 47 (page 2 of Altenberg patent, lines 79–89).

From this examination I conclude: (1) That the plaintiff cannot broadly claim a patent for a lunch box having a body and cover hinged together, and the cover to be campanulate in cross-section, and within the cover of which a thermos bottle can be seated and held from sidewise motion by the curved walls of the cover; (2) that the plaintiff cannot broadly claim a patent for a thermos bottle; (3) that the plaintiff cannot broadly claim a patent for a spring arranged across said cover, at the inner side thereof, and acting to press the bottle toward the top of the cover having at one end a pivotal connection with the cover, so as to swing on a vertical axis, and having at the other end a detachable connection with the cover which connection holds the spring against turning on its pivot, said connection being releasable by pressing the end of the spring upward.

I am of the opinion, however, that the plaintiff can claim a patent under claim 2 for a combination of the elements, when all of them appear in the combination in the manner in which I have heretofore interpreted the said claim 2, and that the novelty and chief characteristic of claim 2 of the patent in suit are the form of cover of the box in which a thermos bottle can be seated and held from sidewise motion by the walls of the cover, and the spring acting to press the bottle toward

the top of the cover and into its seat therein, which shall have at one end a pivotal connection with the cover so as to swing on a vertical axis, and having at the other end a detachable connection with the cover, which connection holds the spring against turning on its pivot, said connection being releasable by pressing the end of the spring upward.

I will therefore pass to the question of infringement, and in this connection it should be noted that the word "campanulate," used to described the shape of the cover, means bell-shaped, and I do not think that, in order to constitute an infringement of the patent in suit, if the other elements be found in the combination, it need be in exactly the same shape as that shown in the patent in suit, but must be of such shape that the bottle will be held therein from sidewise motion by the curved walls of the cover.

[3] Judged by this test, the first effort of the defendant (Plaintiff's Exhibit 2) infringed the plaintiff's patent in suit, because every element of the patent in suit was found in such close resemblance as to convince me that the defendant must have had, at the time of making the design, one of the plaintiff's articles made under its patent in suit. The only thing missing was the bottle, and the cover was made to receive one which defendant expected those to whom it sold the kit to supply.

The defendant is liable in the first instance, therefore. Safety Car Heating & Lighting Co. v. Gould Coupler Co. (D. C.) 229 Fed. 429; Kreplik v. Couch Patents Co., 190 Fed. 565, 111 C. C. A. 381; Goodyear Shoe Machinery Co. v. Jackson, 112 Fed. 146, 50 C. C. A. 159, 55 L. R. A. 692. The difference in the shape of the cover was slight, and in my judgment it performed the same function in the same way as the curved side walls of the cover in the plaintiff's patent in suit, in conjunction with the spring in preventing motion of the bottle. This must be so because, whatever the shape of the section below the top of the curve, any side motion of the bottle would shorten the space between the cover part engaged and the spring. This infringement continued for a considerable time after notice and promise to discontinue.

The second effort of the defendant did not, in my judgment, infringe the plaintiff's patent in suit, because the tray, added to separate the contents of the cover from the contents of the lower part of the box, was not a spring of the character covered by the plaintiff in claim 2. As we have shown, the plaintiff's patent was not broadly a patent for any of the elements, but was a patent for all of them in combination, and then strictly limited by the prior art.

Take the Altenberg patent, supra, in which a strap which buckled, the same being riveted to the cover, satisfactorily performed the service of holding the bottle in place in the cover. In what respect does the spring used in the plaintiff's patent in suit differ from the strap in the Altenberg patent, other than that the spring is of metal and the strap was of leather, except in the particular way in which said spring is connected, moves, and is fastened.

Take, also, the other patents offered to show the prior art, and it is apparent that the spring was not new, its method of connection was not

new, its method of movement was not new, nor was its method of fastening; but all, taken together with the other elements of claim 2 of the patent, were novel, and to infringe claim 2 of the patent in suit all these elements must be found in Plaintiff's Exhibit 5, and I do not find them.

I do not find that the tray in the defendant's box, Plaintiff's Exhibit 5, is connected with the cover in the sense used in claim 2 of the plaintiff's patent in suit for the connection of the spring therein described, because it does not swing on a vertical axis, nor is the detachable connection with the cover released by pressing the spring upwards; and even if claim 1 of the plaintiff's patent could be sustained, it could not, in view of the Clist patent, supra, which shows a clip *18* and the cover *13* connected in the pintle portion *19*, be stretched beyond the form shown in Fig. 1 of the drawings, in which the clip *11* was affixed to the cover before the parts were assembled independent of hinge *6*. Therefore I cannot find that it infringed the plaintiff's patent in suit. Universal Brush Co. v. Sonn, 154 Fed. 665, 83 C. C. A. 422; Portland Gold Mining Co. v. Hermann, 160 Fed. 91, 87 C. C. A. 247; Union Match Co. v. Diamond Match Co., 162 Fed. 148, 89 C. C. A. 172.

Plaintiff made some point of the sanitary benefit of substituting metal for a leather strap, where it could come in contact with the food or the hands of a user on which there was grease, and if there be anything to that claim, then surely the substitution of the tray in defendant's kit for the spring in the plaintiff's kit would be of benefit along the same line, in that it would prevent the thermos bottle from coming in contact with the food below, and the tray would be easily cleaned.

I therefore find as follows: That claim 1 of the plaintiff's patent in suit is not valid. That claim 2 of the plaintiff's patent in suit, as I have interpreted the same, is valid. That the defendant infringed claim 2 of the patent in suit, and continued such infringement after notice, by the manufacture and sale of the kit, Plaintiff's Exhibit 2. That the kit made by the defendant, Plaintiff's Exhibit 5, did not infringe claim 2 of the plaintiff's patent in suit.

Judgment may be entered that claim 1 of plaintiff's patent in suit is invalid; that defendant's second kit, Plaintiff's Exhibit 5, does not infringe the plaintiff's patent in suit; that claim 2 of the plaintiff's patent in suit is valid; that the first kit made by the defendant, Plaintiff's Exhibit 2, infringed the patent in suit; and granting to the plaintiff the relief prayed for in the bill of complaint as to said infringement.