### WOLFE v. BEDFORD-CHEVROLET SALES CORPORATION.

District Court, E. D. New York. March 4, 1929.

No. 3476.

[black redaction blocks]

Leonard Day, of New York City, for plaintiff.

William G. McKnight, of New York City (Drury W. Cooper, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity for relief by injunction and damages because of the alleged infringement by the defendant of United States patent No. 1,493,814, issued to George H. Higgins, assignor, to James Thruston Wolfe, the plaintiff, for folding top for vehicles, dated May 13, 1924, on an application filed August 22, 1914.

The single claim of the patent reads as follows:

"A foldable vehicle top comprising a main bow, a front bow, two-part jointed side arms projecting said front bow forwardly from said main bow, an intermediate bow pivoted to and extending from the rear parts of the said side arms upwardly and forwardly to the cover line, supporting links extending from the upper portion of the intermediate bow downwardly and forwardly to the front parts of the side arms and fulcruming links pivoted to and extending from the upper portion of the main bow to the lower portion of the intermediate bow and pivoted to said intermediate bow between its connections with the supporting links and its connections with the side arms; all of said connections permitting, in shelter position, pivotal action of the parts connected; the parts of each of the side arms being deflected upwardly to the joints which connect them and said joints being limited in upward movement; the front bow being provided with means for holding it in shelter position and fulcruming upon its supporting links and said links by the position of their connections with the intermediate bow, developing a substantial rearward thrust on the front parts of the side arms, to assist in holding the side-arm joints in their elevated position and against downward breaking."

No evidence was offered by plaintiff to carry the date of invention back of August 22, 1914, the filing date.

The patent was not granted until nearly ten years after the application was filed.

The defendant does not manufacture but does sell automobiles equipped with the top alleged to infringe.

The defendant contends that the patent in suit is invalid, that it is anticipated, and is void for lack of patentable novelty.

The alleged invention relates to what are commonly known as "one-man extension tops," for use on touring cars, motorboats, and other vehicles.

The main object, as stated by the patentee in his specification, "is to enable such top to be easily and quickly extended or folded by a single operator on either seat or either side of the vehicle, without excessively elevating or depressing any part of the covering during these operations."

"Another object is to assemble the front and intermediate bows in such manner that when the main supporting bow is raised from its folded or clashed position to or beyond a substantially vertical position, the front and intermediate bows are automatically swung by their own weight toward the front for partially extending the top, thereby permitting the extension to be completed by the operator. * * *"

"A further object is to deflect the toggle joints some distance above the plane of the toggle sections and to provide said toggle joints with stop shoulders wholly above the lower edges of said sections when the top is distended, so as to reduce the liability of flexing these joints downwardly by vibration of the car or other accidental causes." Fig. 1 shows "a portion of an automobile body A and a flexible cover a having its rear end fastened in the usual manner to the rear end of the body A and its remaining portions attached at intervals to rear bows 1 and 2, a main bow 3, and front and intermediate bows 4 and 5."

The main bow 3 is properly so called because it carries the entire weight of the entire structure.

"The front bow sockets 4' are connected by toggle joints 7 to suitable toggle arms 8 which are pivoted at their rear ends at 9 to the upper ends of the main sockets 3."

To sustain these side arms the patentee provides his link construction, as follows: "The intermediate bow sockets 5' are pivoted at 12 to approximately the central portions of the rear toggle sections 8"; and as other sustaining means, "the sockets 5' are connected below their centers by tie pieces or links 13 to suitable extensions 14 on the upper ends of the main sockets 3' above the pivots 9," and "the front sockets 4' are pivotally connected to the front ends of links or tie pieces 15 having their rear ends pivotally con-

nected to the intermediate sockets 5' above the centers thereof."

It is obvious that in attempting to fold the top, the moving of the front bow 4 upwards upon its joint 7 will cause a rearward and upward movement of the intermediate bow 5, due to the lever action of link 15, and the rearward movement of the bow 5 will result in a downward thrust of toggle arm 8 because of the fulcruming action of bow 5 upon the lower end of link 13, bringing the top to the position shown in dotted lines in Fig. 1, and the folding may be completed by a further movement to the rear.

Plaintiff on the trial stressed the importance of the arch construction, the side arms and the toggle joint as sustaining means, but that does not seem to have been the view of Higgins, who, as appears by the specification, considered the "link construction fulcruming link 13, intermediate bow 5, and supporting link 15, as the main self-sustaining means" for the two-part side arms, (specification, page 2, lines 53-60, 113; page 3, line 1; and page 2, lines 24-39) where he says:

"Deflecting the toggle joint some distance above the intersections of the planes of the sections 4' and 8 is desirable to establish a toggle lock capable of retaining itself in its locked position against downward displacement under vibration of the machine or other accidental causes which might tend to depress said joint and thereby break the lock and allow the toggle sections to sag; and in some instances it may also be desirable to support the front bow upon the upper edge of a wind-shield or dash 11, as shown in Figures 1 and 5, but these features only give greater stability to the top and may be dispensed with, without affecting the merits of this invention."

In any event, the patentee does not give any exact information as to the elevation of the toggle joint as the specification says, page 1, lines 38-40: "To deflect the toggle joints some distance above the plane of the toggle sections"; page 2, lines 5-8: "The toggle joints 7 lie above a direct line between the front end of the bow 4 and pivots 9 when the top is extended"; and page 2, lines 56-57: "with the slight upward offset of the toggle herein illustrated."

Such broad statements and indefinite and general directions of the specification make it proper to look at the drawing Fig. 1 of the patent in suit for additional aid, if any. Measurements were made of the height of the joint, and, for the sake of comparison with other parts of the structure, measurements were made of the distance between the pivot of the toggle joint and the pivot of the intermediate bow on rear side arm, from Green patent, Wolfe Model, defendant's device, defendant's actual device, and Higgins patent in suit, with the result that the ratio of the height of the joint to the effective length of arm is as follows: Green patent, 2:12; Wolfe Model, defendant's device, 2:12; defendant's actual device, 1½:12; and Higgins patent in suit, 1:12.

The use of a toggle joint was old and well known, one of the most common illustrations being found in the folding two-foot rule, and I believe that it was common to this art.

The course of the patent in suit through the Patent Office was not smooth, but the single claim of the patent in suit was allowed by the First Assistant Commissioner on an appeal from the decision of the Examiners in Chief.

The First Assistant Commissioner, in his opinion, said in part:

"The Golde reference is the most pertinent and the claim here under review defines from the construction in two particulars; the link e of Golde is, in appellant's arrangement, attached to the intermediate bow nearer its pivot and between such pivot and the connection to the intermediate bow of the link f of Golde, and the ends of the parts c and c² of the front bow of Golde are, in appellant's arrangement, turned upward so the line of thrust is above the line of the front bow."

Because he believed these features to be meritorious and not disclosed in the prior art, he allowed the claim.

The Golde patent, Green British patent, and Freeman British patent, were cited as references in the Patent Office, and, while I recognize that there is a presumption that the Patent Office was right in determining that there was invention over the prior art considered by it, such presumption is not conclusive but rebuttable. Westinghouse Co. v. Formica Co., 266 U. S. 342, 348, 45 S. Ct. 117, 69 L. Ed. 316; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; De Lamar v. De Lamar Min. Co. (C. C.) 110 F. 538, 539.

In the instant suit, however, a much more pertinent reference than even the Golde patent was introduced, that is, the article published January 2, 1914, in "Motor," showing a top designated "Golde Patent One-Man Top," and the text stating that "the manufacturer, The Golde Patent Mfg. Company, are putting out this top, which is the latest addition to this company's line," and

is their "type 66"; and, as that publication was not before the Patent Office, but is in evidence here, the presumption is unavailing, as it does not extend beyond the record before the Examiner. Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. R. Co. (C. C. A.) 172 F. 371, 392.

United States patent No. 1,034,899, issued to Traugott Golde, for folding top for vehicles, dated August 6, 1912.

Using the designating names of the members of the patent in suit with the letters of the Golde patent, it is apparent that they read on each other:

Main bow $A$, two part side arms $c^2$ and $c$ with joint at $c^3$, rear section side arm $c^2$ pivoted to main bow $a$ at $c'$, intermediate bow $d$ pivoted to rear section side arm $c^2$, supporting link $e$ pivoted at $e'$ to intermediate bow $d$ and at $e^2$ to main bow $a$ and link $f$ pivoted to intermediate bow $d$ at $f'$ and to front section side arm $C$ at $f^2$.

The joint $c^3$ operates upon a pivot which is elevated above a straight line between the front bow $c$ and the pivot $c^1$ and the arms $c$ and $c^2$ are provided with abutting edges to prevent upward deflection of the joint.

The fulcruming link $e$, intermediate bow $d$, and supporting link $f$ are the link construction of the Golde patent.

The claim does not specify the location of the pivot points on ancillary bow $d$ for struts $f$ and $e$, and they might be shifted as in the patent in suit are the pivot points on intermediate bow $5$ of supporting link $15$ and fulcruming link $13$. Either arrangement would embody the same "self sustaining function" and "easy shifting function." There would be no difference in kind, only in degree.

Article published January 2, 1914, in "Motor," shows an illustration of a top designated as "Golde Patent One-Man Top," and states in the text that the Golde Patent Manufacturing Company are putting out the Golde patent one-man top.

The disposition of the parts is identical with that of the patent in suit.

The joint or hinge is raised as in the Golde patent, and, even if, as contended by plaintiff, it is at the upper edge, it is above the plane which connects the centers of the two ends of the side arm, and the effect is the same.

In their attachment to ancillary bow $d$ the struts $e$ and $f$ are reversed so that they are identical with the attachment to intermediate bow $5$ of fulcruming lug $13$ and supporting link $15$ of the patent in suit.

I can see no invention in elevating the joint or hinge between the two parts of the side arms, which is already above in the Golde patent and article in "Motor," as it would require but little mechanical skill to cause the manufacturer to elevate the joint a little higher above, if he found that in use there was any slight downward deflection of the side arms due to vibration of the car, as such change would be only one of degree.

If there could be any invention over Golde in raising the joint higher above, then the distance should be given, and no such information is definitely given in the patent in suit.

British patent No. 4304, of 1913, issued to Edward Arthur Green, for improvement in or relating to hoods for road vehicles, the stipulated effective date being February, 1914.

The main bow carries all the bows and the mechanism for projecting the front end of the top forwardly.

There are two part side arms with a joint $K$ which is above the plane of the side arms. Links $O$ and $L$ are positioned precisely as are the corresponding parts $13$ and $15$ as shown in the patent in suit.

Complete specification, page 3, line 16, says:

"The pivot $K$ is located at a point higher than the pivots $N$ and $a$ in a known manner whereby, when the hood is extended as shown and the front of the hood is attached to the screen $Q$, the joint at $K$ is self sustaining and will not bend downwards, and thus no additional support is necessary at that point. The rods $L O$ and arm $M$ at the same time tend to maintain the rigidity of the joint at $K$."

The arm $G$ is not found in the patent in suit; it is attached to and an extension from the side arm $E$. It makes the device still stronger and permits a readjustment of the parts to permit the hood to be fitted to vehicles of different lengths.

If the rod $G$ were removed, the hood would still be self-supporting.

British patent, No. 13,546, issued to William Henry Freeman, for improvements in cape cart hoods or cabriolet covers for motor cars or similar vehicles, the stipulated effective date being June, 1913.

While it is undoubtedly true that, reference being had to Fig. 6, the patent shows a bow which carries forwardly projecting parts comprising side arms $C$ and $C^*$ joined at $C^2$ by a joint just above the plane of the side arms and an intermediate bow $D$ which

is pivoted to the part *C* of the side arms and also the links *E* and *F* which are connected to the intermediate bow to the upright bow and to the side arms in a manner corresponding to the arrangement of corresponding members shown in the patent in suit, it seems to me also to be true that Freeman did not rely upon the arch construction for the front bow arms to retain the top in shelter position, but relied upon a pillar *i* to secure it in supporting engagement with the arm projecting the front bow. There is also an additional feature, the diagonal brace *g* which is used as a buggy brace is used, to give tension to the structure.

As has been shown, Green, Freeman, Golde, the patentee, and Golde, the manufacturer, all disclosed before Higgins, the patentee in suit, the desirability of a joint deflected above the plane of the arms, and each of the prior patents, Golde, Freeman, and Green, show toggle joints as being provided with shoulders or abutting edges so that the joints may not be deflected upwardly.

The patent in suit is invalid for anticipation and lack of patentable novelty.

A decree may be entered in favor of the defendant dismissing the bill, with costs against the plaintiff.