BEEMACK FURNACE CO. v. EUREKA STEEL RANGE CO.

No. 4093.

District Court, E. D. Illinois.

Sept. 27, 1930.

George Bayard Jones, of Chicago, Ill., and Wilbur B. Jones (of Salkey & Jones), of St. Louis, Mo., for plaintiff.

Wm. H. Schaumberg (of Eilers & Schaumberg) and John V. Lee, both of St. Louis, Mo., for defendant.

WHAM, District Judge.

This is a suit by the owner of patent No. 1,603,014, issued October 12, 1926, on the application of Herbert C. Beasley and Robert MacDougall to restrain the alleged infringement of said patent by the defendant and for an accounting. On the trial of the suit and theretofore in its bill of particulars it was stated that complainant would rely only on claims 1, 2, 3, 4, 5, 6, 11, 24, 27, 28, 29, 30, and 31 of the patent in suit.

The invention, as stated in the patent, "relates to improvements in furnaces adapted particularly for treating, fusing and enameling metal ware." It is contended for the invention that it constitutes the first successful continuous, counterflow furnace ever produced for enameling sheet metal ware; that it marked a distinct advance in the enameling art by largely increasing rapidity and economy of production without impairing and perhaps improving the quality of the product. These contentions are established by the evidence.

The defendant has constructed a furnace in its plant at O'Fallon, Ill., for its own use in enameling stove parts, and the complainant alleges that the defendant's furnace infringes its patent. The defendant answers that the complainant's patent and each claim thereof is invalid for want of invention, and, if valid, the defendant's furnace does not infringe.

It appears from the evidence that the defendant's officers and employees, before constructing the defendant's furnace, had ample opportunity to know the precise construction and principle of the complainant's patented furnace, and had actually inspected the furnace of the Peerless Enameling Company at Belleville, Ill., which had been constructed by license in accordance with the teachings of the complainant's patent.

In attacking the validity of the patent in suit, the defendant relies on numerous prior patents going back over a long period, including several which, as shown by the file wrapper, were not cited by the Examiner during the prosecution of the application for patent, and insists that certain of said patents not cited are of such pertinent character that

they must have been overlooked by the Examiner, and for that reason the usual presumption of validity arising from the issuance of a patent by the Patent Office does not prevail in this case. R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 30 F. (2d) 271; Id. (C. C. A.) 31 F.(2d) 565; Wolfe v. Bedford-Chevrolet Sales Corp. (D. C.) 31 F.(2d) 124. It appears from the evidence, however, that the patent in suit is for a novel combination of old elements, adapted and calculated to advance the art of enameling. As I read them, I do not find that any one of the references relied on by the defendant in addition to those cited by the Patent Office Examiner discloses a combination comparable to that disclosed in the complainant's patent, and which would be practicable in the art of enameling. It would seem, therefore, that the defendant's contention in this respect should not prevail, but the complainant should be, and is, entitled to the benefit of the usual rebuttable presumption of validity which attends patents issued by the Patent Office.

A study of the state of the prior art, as disclosed by the evidence including the prior patents cited by the defendant, convinces me that the combination patent in suit not only discloses invention, as above indicated, but one of distinct merit. From the box-type furnace which was the most improved means known in the art of enameling sheet metal ware prior to the invention of complainant's furnace to the successful continuous, open-end counterflow furnace disclosed in the complainant's patent is shown by the evidence to have been a long step in advance. I further find that each of the claims relied upon by the complainant lays claim to a novel combination which gives it validity.

Since the complainant's combination patent did create what appears from the evidence to have been a remarkable improvement in the means used in the art of enameling and was new in the important field of continuous furnaces successfully used in that art, its owners are entitled to the benefit and protection of the rule prevailing in such cases allowing a liberal construction and broad range of equivalents in determining whether structures of similar nature and involving similar principles have infringed. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. at page 63, 43 S. Ct. 322, 67 L. Ed. 523; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122.

Referring to the patent itself for de-

scription of the patented structure and to the evidence for a description of the defendant's structure, without attempting to describe them in this opinion, I find that structurally the furnace proper of the defendant is substantially like that of the complainant, differing from it only in detail without departure in principle. In operation, the defendant uses driers separate from the furnace, and uses the furnace only for preheating, fusing, and cooling the different successive coats of enameling instead of using it for the entire process of drying, preheating, fusing, and cooling as provided for and contemplated by the plaintiff's patent.

The evidence shows that the defendant's furnace as constructed could be used for the entire process as described in the patent, but, by reason of the fact that an additional or third operation of brushing is required on the defendant's product which must be performed after the coat of enameling is dried, but before it is burned on the ware, driers outside the furnace are used. The defendant having appropriated the complainant's patented structure, does the fact that, in order to meet its peculiar problem in enameling, it provides additional driers and uses them for drying its ware before placing it in the furnace instead of using the furnace for the entire process, including drying, for which the furnace is intended, enable the defendant to escape the charge of infringement? Such is not the law as I understand it, and I am compelled to hold that claims 1, 2, and 3 of the complainant's patent are infringed by the defendant's furnace.

Claims 4, 5, and 6 respectively are similar to claims 1, 2, and 3 respectively, with a clause added as follows: "A conveyor located outside of the furnace, the furnace being provided with a continuous opening and said conveyor adapted to support material through said opening and to convey same within and through said furnace and means for preventing the escape of heat through said opening." Having held claims 1, 2, and 3 to be infringed by defendant's structure, the conclusion seems inescapable, in view of the evidence, that claims 4, 5, and 6 are also infringed. The defendant's furnace unquestionably has all of the additional elements specified in these claims.

If there be novelty in claims 11, 24, and 27, which claims are not limited to combination with the type of furnace described in the plaintiff's patent, it arises from the improved construction of the conveyor and the means of preventing escape of heat through the slots in the furnace. I am of the opinion that these elements as claimed do constitute a sufficient improvement over any similar elements or combination of elements of a like nature to give the combination patentability. Though the defendant's conveyor and means of preventing the escape of heat differs very considerably in detail of structure from those claimed by the complainant, they serve exactly the same purpose in practically the same way, and are sufficiently similar, as used, to place them in the class of mechanical equivalents. I find that claims 11, 24, and 27 are infringed by defendant's structure.

The defendant's furnace is the same in principle, structure, and operation as that described in claim 28, and I find that it infringes that claim.

Claim 29 specifies "an oven of the class described, the walls of which form an elongated passage open at its opposite ends and in which are formed a pair of slots extending from end to end of said passage, means for heating said passage about midway the ends thereof," combined with "an endless conveyor chain forming a loop, the sides of which are substantially parallel to each other and to said slots, and which are outside said passage, the ends of the loop extending substantially beyond the open ends of said passage, means for supporting and driving said conveyor chain and supports for material to be heated carried by said conveyor and arranged thereon so as to travel in said slots and extend into said passage." Claim 30 is identical with claim 29, and, in addition, claims a "flexible covering means carried by the conveyor chain extending over the slot and adapted to close the same and prevent the escape of heated air therethrough." Claim 31 is similar to claim 29, except that it specifies that the slots through which the supports for material to be heated travel shall be formed in the roof of the furnace or oven.

It is apparent from the description of the structure claimed in claims 29, 30, and 31 that it was the conception of the inventor to have one conveyor with a single loop at each end of the furnace, each side of the conveyor serving one side of the furnace. In the defendant's structure, having, as it does, the driers on each side of the furnace, there are two conveyors, each forming a loop at each end of the furnace substantially beyond the open ends thereof, adapted to carry the supports for the material to be heated through the furnace on one side of the conveyor and through the drier on the other side of the conveyor. The defendant has in connection

with its conveyor a flexible covering means for preventing the escape of heat from the furnace through the parallel slots through which the supports for the material travel. Both the means of preventing the escape of heat and the construction of the overhead conveyor differ in detail from the structure of the complainant's means of preventing the escape of heat and the overhead conveyor. They perform the same function, however, in practically the same way as those of complainant's, and in my judgment constitute mechanical equivalents. The substitution by the defendant of two conveyors having two loops for one conveyor with a single loop is an addition to complainant's device, and may be an improvement, in that the outer side of each loop serves a supplemental drier, and at the same time more space for the convenience of the workers is afforded which may promote their efficiency. But, inasmuch as each conveyor in passing over the furnace performs the same work in the same way as does the complainant's conveyor, it is but a mechanical equivalent of the complainant's conveyor. The use of two conveyors to do the work of one cannot obviate their infringing nature.

The complainant is entitled to an injunction as to those claims which are herein held to be infringed, viz. 1, 2, 3, 4, 5, 6, 11, 24, 27, 28, 29, 30, and 31, and to an accounting as prayed in the bill of complaint. Counsel for the complainant will prepare an order in accordance with the conclusions herein expressed and present the same for approval.