## HAUSER v. SIMPLEX WINDOW CO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1926. Rehearing Denied March 8, 1926.)

No. 4687.

1. **Patents** ⚖=328—No. 1,256,839, claims 1, 8, for mounting and control of casement windows, held not infringed.

Soule patent No. 1,256,839, claims 1, 8, relating to mounting and control of casement windows, *held* not infringed.

2. **Patents** ⚖=168(2)—Patentee, limiting claim to obtain patent, cannot claim construction otherwise permissible.

Patentee, having by amendment limited claim in order to obtain patent, cannot claim construction permissible, if limitations and restrictions were not in claims.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Suit by the Simplex Window Company against Fred Hauser, doing business under the firm name and style of the Hauser Window Company. Decree for plaintiff, and defendant appeals. Reversed and remanded, with directions.

Walter Christie, of San Francisco, Cal., for appellant.

Lincoln V. Johnson and Walter E. Hettman, both of San Francisco, Cal., for appellee.

Chas. E. Townsend, of San Francisco, Cal., amicus curiæ.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal by Hauser from an interlocutory decree sustaining letters patent No. 1,256,839, issued February 19, 1918, to A. C. Soule, and finding infringement of claims 1 and 8. Defendant pleaded noninfringement and invalidity of the patent.

[1] The patent relates to the mounting and control of casement windows in which the sash is mounted on vertical pivots adjacent to one edge thereof and slidably guided on the sill at the bottom of the casement and in the overhead lintel at the top; the inner edges of the sash abutting the usual stops in the window frame to make a weather-tight joint around the sash. The inventor states the objects of his invention to be: The production of a mounting simple in construction, easily installed, weather proof, and that will not accumulate moisture and snow in its working parts liable to freeze and interfere with proper functioning of the various parts.

Hauser, appellant, manufactures a casement window constructed under letters patent No. 1,282,826, issued to him October 29, 1918. Hauser specified his invention as relating to that class of windows in which means are provided for securing a window sash in a window frame so that it can be swung horizontally and reversed to permit both sides of the window to be readily cleaned from the inside of the room; the object being to provide such means which will be cheap and simple in construction, and which can be readily attached to the usual slidable window sashes to convert them into swinging reversible sashes. Claims 1 and 8, found to be infringed, are as follows:

"(1) The combination with a window frame, of upper and lower guides attached to the lintel and sill respectively, a sash, a shoe pivotally engaging the lower edge of said sash contiguous to the corner thereof and slidably engaging the lower guide, a shoe yieldably mounted in the upper edge of the sash in alignment with the first-mentioned shoe and slidably engaging the upper guide and control arms each pivoted at one end to said sash and having its other end adjustably anchored to the frame."

"(8) The combination with a window frame, of a window sash, a pivot attached to said sash and slidably connected with the frame, a control arm having one end movably connected with the sash, the other end having means for engaging the window frame, an adjustable anchor plate co-operating with said arm, and means immovably holding said anchor plate in adjusted position on the sill."

In Soule's device the sash is mounted in a frame by two carrier arms, one at the top and one at the bottom of the sash, one end of each carrier arm fastened pivotally to the edge of the sash, the other end of the carrier arm adjustably anchored to the frame. The sash is also vertically pivoted at the upper and lower corners by shoes. The lower shoe engages slidably a plate of metal fastened to the sill of the frame; the upper shoe engages slidably a groove in the lintel of the frame; the shoe being yieldably mounted upon a stem, the stem having around it a compression spring pressing the shoe into engagement with the groove of the lintel. The sash is held in a fixed position against influences tending to move it by the friction caused by the engagement of the shoe with the groove of the lintel. The frictional or yielding shoe at the top is in exact alignment with the sliding shoe at the lower corner of the sash, so that a movement of the sash causes the lower shoe to slide along the metal track on the sill as the frictional pivot shoe at the top of the sash slides along the groove in the lintel. The frictional, retarding element of the Soule structure depends upon the force of the compression spring mounted on the stem of the sliding pivot, forcing the face of the shoe of the pivot into engagement with the lintel. As the sash is moved, this pivot moves in a plane extending practically the entire width of the frame. In the construction of the carrier arms there may be an adjustment horizontally in either direction along the lintel and the sill without removing or unfastening the anchorage. The anchorage on the upper arm is a metal plate fastened to the carrier arm by means of a pivot. The metal plate extends equidistant at right angles to the carrier arm. Both ends of this plate have open U-shaped slides through which the screws are driven into the lintel. In case adjustment is desired, the screws may be loosened and the anchorage plate slid into position. The lower carrier arm has a metal wear plate fastened to the sill in which plate there is a circular opening which extends into a slot. The end of the carrier arm has a pivot extending through it, the head of which is capable of passing through this circular opening. The stem of the pivot is such in diameter as to permit the pivot to enter into the slot from which it cannot be pulled out because the head extends in its diameter beyond the width of the slot.

Below this metal wear plate is a small plate which has a circular opening corresponding in diameter with the pivot head. In this the pivot head rests. The plate last referred to has two slots rectangular in shape, so placed that each slot is immediately in the circular screw openings of the wear plate. Anchorage is effected by screws through these holes of the wear plate and through the slots of the underneath plate in the lintel; thus causing tight engagement between the underneath plate and the wear plate and the sill. To adjust, screws are loosened and the carrier arm removed horizontally in the desired direction. The pivot head, being fastened in the circular opening of the lower plate, moves the plate in the desired direction. When adjustment is had, the screws are again driven into tight engagement with the sill.

Hauser's structure is a sash, the upper ends of which are pivoted to the sides of the frame by shoes which slide in grooves in the sides of the frame; the shoes forming slidable pivoted connections between sash and frame. Near the center of each side of the sash there is a short metal strip, and the carrier arm is pivotally connected with this metal strip; the other end of the arm being pivotally anchored at the side of the frame above the sill. The pivotal anchorage has a pivot plate which is fastened to the carrier arm by an ordinary rivet. From the upper ends of this pivot plate at right angles to the surface there are tapering prongs fitting into the groove in the side of the frame into which the pivotally sliding shoe connection between the upper end of the sash and the side of the frame slides. The prongs are driven into the bottom of the groove, and the plate is fastened to the side of the frame by means of screws. The prongs aid in holding the pivot plate in position in conjunction with the screws, and overcome the tendency of the pivot plate against a movement vertically relative to the window frame. As a frictional retardent element, Hauser has a pivotal connection consisting of a bolt which passes through a circular opening in the head of the carrier arm, and also through a corresponding opening in a plate on the side of the sash. A thin washer around this bolt is interposed between the carrier arm and the plate. Around the bolt on the inner side of the plate is a thin plate washer, then a spring washer, and another washer and a nut, which is screwed to the bolt. The nut, when screwed tightly, has a tendency to flatten the ends of the spring washer, and the outward force exerted by each end of the spring and washer produces a tight engagement between the carrier arm and the plate on the side of the sash, which resists the rotation of the sash relatively to the arm.

It thus appears that the Soule patent obtains frictional retarding as a result of the yielding pivot shoe mounted between the sash and the lintel, while in Hauser's device the friction pivot depends upon the friction set up between the component parts of the pivot by reason of the quality of the split washer which is in tight engagement with the plate washers and the metal plate on the sash and the arm and the head and the nut of the bolt. The bolt is the axis upon which there is a rotating movement. The differences as pointed out in mechanical detail and in the means of setting up the friction are to be considered with relation to the prior art and to the action of the Patent Office.

In the prior art pertinent, there is a patent to Ekland, issued August 11, 1914, number 1,106,791, for a window which swings on a horizontal axis; the object being to provide means for securing the sash to the frame, so that it can be so swung on a horizontal axis without danger of the sash dropping on account of imperfection of the mechanism or the sash being disengaged from the frame. The inventor mounted a swinging sash on shoes located at the corners of the sash. He had control arms pivoted to the window frame and to the sash. He had a yielding shoe so constructed as to set up resilient action and producing spring pressure against the guideways, and he showed an adjustable anchorage plate.

Patent issued in 1911 to Meixel for a combination reversible window showed a friction shoe made of a leaf spring with associated pivot. It is true Meixel used no carrier arm, but emphasis must be given to the disclosure that the purpose of the shoe used by Meixel was to maintain the window in any position in which it might be placed, and in the shoe there was a spring.

Barnum, in a patent issued June 16, 1914, No. 1,100,342, had a swinging sash and pivots located at the corners and mounted on shoes with sliding guides. He also had control arms pivoted to the sash and to the window frame in arrangement quite similar to those shown in the exhibit of plaintiff. The shoes shown by Barnum are forced outward into a yielding engagement with the guides by means of springs. Barnum did not show an adjustable anchorage on the control arm, but apparently he fastened the control arm with

an ordinary rivet instead of an adjustable anchorage plate.

The file wrapper discloses that certain original claims made by Soule were rejected by the Patent Office on reference to Moore and to Ekland and to an earlier patent issued to Soule. Applicant canceled certain claims, and several times, after rejection, amended claim 1 by specifying the shoe as pivotally engaging the lower end of the sash *contiguous to the corner thereof* and as slidably engaging the lower guide shoe yieldably mounted in the upper edge of the sash *in alignment with the first-mentioned shoe.* The italics shows the amendment after the rejection. [2] The art is quite old, and it was to avoid references that the applicant limited the claim to a structure with a friction shoe contiguous to the corner of the sash; and, having limited his claim in order to obtain his patent, he is not now in a position to claim a construction that he might have had if limitations and restrictions were not in the claims. Computing Scale Co. v. Automatic Scale Co., 27 S. Ct. 307, 204 U. S. 609, 51 L. Ed. 645; Fullerton Walnut Growers' Association v. Anderson-Barngrover Mfg. Co., 166 F. 443, 92 C. C. A. 295; Selectasine Patents v. Prest-o-graph Co. (C. C. A.) 282 F. 223. We must, therefore, look upon claim 1 as limited to a structure wherein the frictional element is a yieldably mounted shoe placed in the upper end of the sash contiguous to the corner thereof, and engaging slidably the guide in the upper part of the frame. Nor do we regard Hauser's pivot as equivalent to Soule's friction shoe. While the two devices use frictional means in obtaining the ultimate result, they do not operate in substantially the same manner.

In claim 8 of Soule's patent the adjustable anchorage has means whereby the position of the carrier arms can be adjusted on the frame after anchored Rejections of claim 8 as first made in the Patent Office were based upon reference to an earlier British patent to Gorton, showing a plate capable of being applied "to the side end of the arm as well as to the sash end without difference in function." Amendment was then made by claiming an adjustable plate co-operating with the arms and "means immovably holding said anchor plate in adjusted position on the sill." Hauser's anchor plate cannot be so adjusted without removal from the frame, although obviously it is capable of adjustment within the limits of the carrier arm to which it is attached.

The defense of noninfringement having

been satisfactorily sustained, we do not pass upon the validity of the patent to Soule, but reverse the decree solely upon the ground that the Hauser device is not an infringement.

Reversed and remanded, with directions to enter a decree dismissing the complaint and allowing costs to appellant.