**DENNIS et al. v. GREAT NORTHERN RY. CO. et al.**

**No. 4341.**

District Court, E. D. Washington, N. D. July 15, 1931.

Graves, Kizer & Graves, of Spokane, Wash., for plaintiffs.

Ernest E. Sargeant, of Spokane, Wash. (F. G. Dorety and John E. Stryker, both of St. Paul, Minn., of counsel), for defendants.

WEBSTER, District Judge.

The plaintiffs are the joint owners of letters patent, No. 1,308,583, dated July 1, 1919, covering a method or process for excavating tunnels and especially adapted to the boring of long tunnels through rock formations. They bring this action for the recovery of damages for the alleged infringement of the patent by the defendants in excavating the Cascade tunnel for the use of the defendant railway company.

It is admitted by the defendants that, in carrying out at least a part of their Cascade tunnel operations, the method described in the Dennis patent was employed. The defense is rested on several distinct and independent claims, each of which goes to the validity of the patent. It is contended that the alleged invention of Dennis was completely anticipated by prior publications relating to the method employed in excavating the Simplon tunnel through the Alps Mountains. It is also insisted that the field of invention was so limited at the time of the application for a patent that the method claimed by Dennis did not constitute patentable invention.

The single claim of the patent reads as follows: "In a method of tunneling consisting in driving an auxiliary heading outside of the main tunnel section, excavating cross cuts from the auxiliary heading, driving a main heading to connect the cross cuts, drilling from the main heading for enlargement to the full tunnel section, and then excavating to the full tunnel section."

The advantages to be obtained by the use of the method or process described in the claim are stated by the patentee in this language: "At the outset I wish to explain that at present the general practice of tunneling is to excavate a heading in advance of the main tunnel, the heading being enlarged by blasting into the main tunnel as the work advances. The result of this is that all the equipment necessary to the tunneling operations have to be brought into the tunnel past the location where the work is being carried on. With this form of practice, much time and labor is lost owing to one part of the work having to be held up for another and also on account of the various operating appliances having to be moved back during the blasting operation. With my method of tunneling I provide a working or pioneer tunnel outside the main tunnel and utilize this working tunnel for the purpose of ventilating the main tunnel workings; carrying pipe lines for compressed air and water to the advanced work around the main tunnel blasting and mucking; carrying muck from the advanced work around the main tunnel enlargement aforesaid and mucking so as not to interfere therewith; enabling the advance heading to be driven and enlargement drilling to be done without interfering with the work at the tunnel enlargement and also as a second outlet for the men in case one of the tunnels should become blocked. * * * From the above description it will be seen that all the advantages hereinbefore set forth as features of this invention are readily obtained through the driving of the pioneer heading and cross cuts to the side of the main tunnel location and while the cost of driving this pioneer heading may be considerable, still, it so facilitates the work of enlarging the main tunnel that it more than saves the cost of its construction in the complete tunneling operation."

As I do not understand that any claim of patentability is based on the feature of central heading with radial drilling, I shall not pause to discuss that aspect of the case.

The publications relied upon by defendants as anticipating the Dennis patent are principally three: (1) an article in the January, 1900, issue of Cassier's Magazine, by Axel Larsen, M. Inst. M. E.; (2) a paper by Sir Francis Fox, M. Inst. C. E., published in London by the Institution of Civil Engineers in 1907, and (3) chapter XIV of Modern Tunnel Practice by David McNeely Stauffer, published in 1911. All these publications deal with the method employed in excavating the Simplon tunnel, and from the file wrapper it seems that none of them was called to the attention of the patent examiners while the Dennis application was under consideration.

█ The file history of the Dennis application discloses that the applicant originally submitted six separate claims of invention, all of which were disallowed on reference to the See, Perin, and Sooysmith patents. Dennis acquiesced in this ruling, but subsequently submitted the single claim which was ultimately allowed by the patent authorities, and which we have hereinbefore quoted in full. In support of the claim which was allowed, the record discloses that the following contention was made: "The single claim now in the case is very specific to applicant's process. It is thought to clearly distinguish from the references because a new function is developed, that is, air is forced into the pioneer and allowed to escape through and out from the main tunnel, whereby all the explosion gases are exhausted and the workmen left unhindered. * * * See's patent would be entirely impracticable except in soft ground for if used in rock which had to be blasted, it would be impossible to get the smoke and powder fumes out of the chamber above his sub-tunnel. The doing of this very thing is the new function of applicant's pioneer." No suggestion was made that the Dennis idea differed from that of See in respect of furnishing a plurality of places for the men to work, or of supplying an additional means of access or egress. These features were characteristic of the See method. See's idea contemplated two tunnels, one above the other, whilst Dennis' process contemplated two tunnels side by side. It was the advantage in ventilation afforded by the Dennis process which was pointed out and stressed as the new function of the applicant's pioneer tunnel.

We call attention to this situation for the purpose of making it plain that plaintiffs must be confined to the specific claim which was allowed the patentee, and that their rights may not be enlarged by a construction which would give them the benefit of rejected claims, or which would broaden or enlarge their rights beyond those specifically granted in the claim actually approved and allowed. Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425–429, 14 S. Ct. 627, 38 L. Ed. 500; Hauser v. Simplex Window Co. (C. C. A.) 10 F.(2d) 457–460; Vanmanen v. Leonard (C. C. A.) 248 F. 939–941.

█ I come now to the Simplon publications. These articles are highly technical, and are illustrated by numerous drawings and diagrams impossible of reproduction here. In addition, they are lengthy, covering many pages of printed matter, and it would be quite impractical to set them forth in this memorandum. The defendants insist that these publications completely anticipated every element of the Dennis patent, and show conclusively that the method covered by the claim of that patent was actually used in the construction of the Simplon tunnel. Counsel for the plaintiffs insist that the Simplon operation contemplated from the outstart the boring of two tunnels, side by side, instead of a single tunnel, and that any use or practice adopted in that undertaking involving the use of the second tunnel was merely incidental or accidental, and evidences no method or process for excavating a single tunnel, as worked out by Dennis in his patent.

A careful study of the Simplon publications leaves little room for doubt that the method covered by the Dennis patent was actually employed in excavating the great Simplon tunnel. My conclusion in this respect is fortified by the expert opinion of Mr. John Vipond Davies, an internationally, not to say world, renowned engineer of unsurpassed experience in large tunnel excavating operations. It must be admitted that Mr. R. H. Thompson, a distinguished and broadly experienced engineer, testified to the contrary, but my study of the publications inclines me toward the views of Mr. Davies. He impressed me as a man of profound learning in his profession, and that he was quite fair and frank in the expression of his views. He testified that in the Simplon work, as shown by the publications, there were parallel galleries and parallel headings used interchangeably; that there was an auxiliary

heading outside of the main tunnel section; that crosscuts were excavated from the auxiliary heading; that the main heading was driven connecting the crosscuts; that the main heading was drilled for enlargement and excavated to the full tunnel section. These, I believe, include all the steps or elements contemplated by the Dennis method, as disclosed by the claim of his patent.

It is true that in the Simplon operation, excepting one or two special occasions, effort was made to develop the main and the secondary tunnels simultaneously, instead of one being excavated substantially in advance of the others, though Larsen's article shows that such result was not always effected. On this point Mr. Davies testified: "In the Simplon tunnel work proceeded by driving two headings parallel one with the other, each of those headings being approximately ten feet and two inches in width and six feet five inches high. They were driven as fast as they could drive them on each tunnel so that roughly they were supposed to and apparently they did, keep step by step. The headings proceeding parallel to each other in the direction the tunnel was driving. Having gotten into a considerable distance, enlargement was started and cross connections were made between the two headings to give access from one to the other to construct the circulatory system of ventilation. * * * As the two parallel tunnels proceeded and at intervals of approximately two hundred metres or somewhat over 600 feet, say, 620 feet, cross cuts were constructed right along as the two tunnels proceeded, making those tunnels continuous."

It is not thought, however, that the circumstance of attempting to develop the tunnels simultaneously and step by step is of any great materiality. The disallowance by the Patent Office of original claims 1 and 2 in Dennis' initial application seems to foreclose any contention that there was any patentable novelty in the Dennis idea of driving the pioneer tunnel substantially in advance of the main heading. Nor is this feature of his process described in the claim of his patent, nor was it pointed out to the patent authorities as a distinguishing feature of the process.

The Larsen article in Cassier's Magazine points out that the original contract for the Simplon work called for two tunnels, the main tunnel to be completed in 5½ years and the second tunnel to be finished gradually as increasing traffic might require. Then follows this statement: "Mr. Brandt fairly astounded the engineering world, but astonishment was soon converted into genuine admiration on its becoming manifest with what rare ingenuity and skill he had dealt with his subject. It was soon recognized that the duplex system which was to be used here for the first time, was, indeed, the only means by which the Simplon could ever be successfully tunnelled, for the principal object of the second tunnel is to carry fresh air into the main passage during construction." This language seems to negative the thought that the use of the second tunnel in connection with the construction of the main tunnel was incidental or casual merely, for the writer states that the principal object of the second tunnel was to aid in the construction of the main tunnel by supplying ventilation, the very ground upon which Dennis insisted that his method differed from the See process.

In the same article, we find a general description of the method of tunnelling employed in the Simplon work in these words: "Turning to the tunnel-work proper, we find that one of the chief aims in the programme of the management is to work simultaneously in as many places as possible. Let us assume, for example, that the main tunnel had been driven 1000 yards, while a distance of only 600 yards had been reached in the second tunnel. In that case the work would still be vigorously continued in the former, regardless of the slower rate of progress shown in the latter tunnel. In order to help the second tunnel along, without, however, interfering with the work in the main tunnel, the winzes would in due course be cut across to the line of the second tunnel, the driving of which, in its turn, would be proceeded with in both directions, i. e., forwards and backwards. Again, should the excavation make more rapid strides in the secondary tunnel than in the main passage, the same steps would be taken with regard to the latter, in order to make progress equal."

Here we have a graphic description of the method used in Simplon, whereby a plurality of working faces were provided at the same time—a feature of the Dennis process greatly stressed and emphasized by counsel for plaintiffs as a distinguishing characteristic of its underlying idea. The method described by Larsen of making crosscuts from one tunnel to the other, or to the line of the other, and then excavating forward and backward at the same time, is precisely what I understand the Dennis method contemplates.

The foregoing description of the actual

tunneling method also shows that the faces of the two tunnels were not kept side by side, but that one would be driven ahead of the other and winzes would be cut across to the line of the backward tunnel, and this regardless of which tunnel was the more advanced.

In explaining the tunneling methods employed in the Simplon work, the Dennis process seems to be quite accurately described. At least there is no marked or substantial difference between the Simplon method and the one embodied in the patent in suit, so far as I am able to discern or discover.

In the paper on the Simplon tunnel by Sir Francis Fox, one of the three international experts who approved the plans for the undertaking, the author says: "Instead of making one tunnel for a double line of way, as in the St. Gothard and Mont Cenis tunnels, two single-line tunnels, 17 metres (55.8 feet) apart between centre-lines, with cross oblique passages connecting them at every 200 metres (218.7 yards), were designed. It was arranged that one tunnel only should be built at first, with a parallel gallery, and this gallery is to be enlarged for the second tunnel when, according to the international agreement between Switzerland and Italy, the gross receipts exceed £3,218 per mile per annum. * * * The importance of providing two single-line tunnels in this case cannot be over-estimated, and experience has fully justified their adoption. In fact, the Author has no hesitation in saying that had not this been arranged originally, the work would have proved impossible to carry out, and would have had to be abandoned for reasons given later on."

The article then goes on to show the tremendous advantages in construction obtained by the duplex, or two-tunnel, method of operation, stressing ventilation as one of the important results. In the light of the language of this distinguished expert, it will hardly do to say that the use of the secondary tunnel as an aid to the construction of the main passage was merely incidental or accidental. He states that without the secondary tunnel as originally decided upon the whole undertaking would have resulted in complete failure.

The chapter in Modern Tunnel Practice, by Stauffer, devoted to the Simplon operation, while not so complete and definite as the others, demonstrates that the idea underlying the Dennis patent was successfully used in that great engineering achievement. In this article, the second gallery is referred to as the service tunnel.

The mere fact that the Simplon plans, as finally approved, contemplated the ultimate completion of the second tunnel for commercial use, is not thought to be of distinguishing significance, since it seems quite clear from the publications that the decision of the Simplon engineers to construct two single-track tunnels, instead of one double-track tunnel, was influenced largely by considerations having to do with the successful excavation of the main passage.

Larsen, in his article in Cassier's, states that the principal object of the second tunnel was to carry fresh air into the main tunnel, thereby facilitating its construction, and that the duplex method was the only means by which the Simplon could ever be successfully tunneled. And Sir Francis Fox, in his paper, emphatically states that the two-tunnel or duplex method was indispensable to the construction of the main passage, and that by no other process could the enterprise have been carried into execution.

In the light of these circumstances, I am convinced that the contemplated or actual completion of the secondary tunnel is wholly immaterial. The point is that the Simplon method was grounded upon the thought that the secondary tunnel was indispensable to the successful excavation of the main tunnel, and that the duplex system was adopted as a method primarily because of the great assistance which such a plan would afford in carrying out the ambitious undertaking of excavating a passageway through the mountain. The use of the secondary tunnel was not incidental. Its construction as a separate unit was an integral and vital part of a comprehensive plan or method of excavating a tunnel through the mountain, without which the whole enterprise would have come to nothing.

Sir Francis Fox' paper makes this very clear, for he states that, in the absence of the two-tunnel method, the whole work would have had to be abandoned.

In justice to Mr. Dennis, the court deems it appropriate to say that it is convinced that he honestly believed that the method described in his patent was novel, and that the idea originated with himself, and that, in securing the patent, he acted in the utmost good faith. He testified that, at the time of filing his application, his attention had not been called to the method or process used in the Simplon work. The publications to

which we have adverted, however, demonstrate to my mind that he was mistaken in his belief, and that the process described in his claim long before had been used in the great Simplon enterprise, and publicly proclaimed to the world. In these circumstances, Dennis' good faith and lack of information with respect to the prior use of the method described in his patent are of no consequence. Bone v. Marion County, 251 U. S. 134–144, 40 S. Ct. 96, 64 L. Ed. 188.

[4] We are not unmindful of the presumption of validity arising out of the issuing of the patent. This presumption, however, is a rebuttable, not a conclusive, one, and, in this case, is materially weakened by the fact that the Simplon publications were not called to the attention of the patent authorities while the Dennis application was pending and being considered. Westinghouse Electric & Mfg. Co. v. Toledo, etc., Ry. Co. (C. C. A.) 172 F. 371; Wolfe v Bedford-Chevrolet Sales Corp. (D. C.) 31 F.(2d) 124; Cleveland Foundry Co. v. Kaufmann Bros. (C. C.) 126 F. 658; American Can Co. v. Goldee Mfg. Co. (D. C.) 290 F. 523; International Flatstub Check Book Co. v. Young & Selden Co. (C. C. A.) 284 F. 831, 832.

I am convinced that, had the Simplon publications now under review been drawn to the attention of the patent examiners, Dennis' application would have been denied.

I shall not further labor the question. My conclusion is that the patent in suit was anticipated by the publications describing the Simplon work, and that the method or process set forth in the Dennis claim was at the time of the issuance of the patent wholly lacking in patentable novelty.

Decree accordingly.