## KAWNEER CO. v. PITTSBURGH PLATE GLASS CO.

### No. 1376.

United States District Court
W. D. Michigan, S. D.

Dec. 30, 1952.

terclaim asked for a declaratory judgment, 28 U.S.C.A. §§ 2201, 2202, determining that its glass setting does not infringe "any claims" of the patent, and determining that the patent is invalid.

In response to the defendant's motion for a more definite statement as to the claims of the patent alleged to be infringed, the plaintiff had specified claim 2, and it later advised the defendant that it would also rely on claims 4 and 7. In the course of the trial plaintiff moved to strike defendant's counterclaim as to all claims of the patent except 2, 4, and 7, on the ground that, having specified only these three claims as infringed, there was no actual controversy as to other claims. This motion, which was renewed at the conclusion of the trial, presented the question as to whether the defendant by its counterclaim for a declaratory judgment could raise the issues of validity and infringement as to all nine claims of the patent where, subsequent to the filing of its complaint generally alleging infringement, the plaintiff had sought to limit its charge of infringement and the scope of the litigation by specifying that it would rely on only three claims. In its opinion denying the plaintiff's motion to strike the court held that the complaint generally alleging infringement, the defendant's answer and counterclaim denying infringement and alleging invalidity, and the plaintiff's reply denying invalidity, created an "actual controversy" within the meaning of the declaratory judgments act as to the validity and infringement of all claims of the patent. See Kawneer Co. v. Pittsburgh Plate Glass Co., D.C., 103 F.Supp. 671. Therefore, the issues of validity and infringement as to all nine claims of the patent are now before the court for determination on the merits.

In support of its claim of invalidity of patent because of prior art anticipation and lack of invention, defendant cites the following patents and publications, none of which were cited as references in the Patent Office record of the prosecution of the application for the patent in suit: James P. Murnane, No. 1,003,195 issued Sept. 12, 1911; Daniel J. Murnane 1,008,984 issued Nov. 14, 1911; Reuter 1,589,560 issued June 22, 1926; Nelson 1,649,915 issued Nov. 22,

Loftus, Lucas & Hammand, Clarence J. Loftus, William E. Lucas, Chicago, Ill., Uhl, Bryant, Slawson & Wheeler, Marshall M. Uhl, Grand Rapids, Mich., for plaintiff.

McCobb, Heaney & Dunn, Edward C. McCobb, Stephen F. Dunn, Grand Rapids, Mich., Leland Hazard, Olen E. Bee, Oscar L. Spencer and Elmer S. Utzler, Pittsburgh, Pa., for defendant.

STARR, District Judge.

Plaintiff The Kawneer Company, a Michigan corporation, assignee and owner of U. S. Letters Patent No. 2,463,284 issued March 1, 1949, for a "glass setting means," filed complaint alleging infringement by defendant The Pittsburgh Plate Glass Company, a Pennsylvania corporation. It asked damages, injunction against further infringement, costs of suit, and attorney fees. Defendant answered denying infringement, alleging invalidity of patent, and by coun-

1927; Young 1,689,611 issued Oct. 30, 1928; Reuter 1,699,021 issued Jan. 15, 1929; Schlacks 1,724,374 issued Aug. 13, 1929; Toney 2,015,769 issued Oct. 1, 1935; Peterson 2,185,735 issued Jan. 2, 1940; Toney 2,268,269 issued Dec. 30, 1941; and Toney 2,475,682 issued July 12, 1949, on application filed May 26, 1945; "Pencil Points" November, 1940 (page 733); "New Pencil Points" February, 1943 (pages 1 and 29 to 41, inclusive); and "New Pencil Points" August, 1944 (pages 39, 40, 41, 58 and 59), all published by Reinhold Publishing Co., New York; "Architectural Record" October, 1942 (pages 71 to 78, inclusive), and "Architectural Record" February, 1945 (pages 104 and 105), both published by F. W. Dodge Corp., East Stroudsburg, Pa.; "Reports on Two Architectural Competitions," 1943, published and copyrighted by plaintiff; "Store Design" January, 1945, published and copyrighted by defendant.

The patent in suit relates to a flush-glazing, glass-setting means intended principally for store fronts, whereby plates of glass of greater width than the store-front openings are set in recessed, U-shaped, metal, longitudinally extending channels, thereby creating the appearance of continuous side walls or ceilings and affording full vision of the entire store when viewed from the outside. Claims 2, 4, 7, and 9, which are reasonably illustrative of all claims, provide as follows:

"2. In a metal plate glass setting for store fronts for firmly but resiliently holding large plates of glass in a U-shaped longitudinally extending recess in store fronts to create the appearance of a continuous uninterrupted wall or ceiling surface from outside the store after the plate of glass is installed, the combination of a metal main sash member having a base and spaced apart inside and outside walls perpendicular to the base at its opposite edges, each perpendicular wall extending away from the base substantially the same distance, a plate glass engaging flange extending from the inside perpendicular wall to the glass, a closure member having a relatively broad flat surface positioned with its exterior surface in a plane substantially with the inside glass engaging flange and extending continuously from the glass to the edge of the outside perpendicular wall of the main sash member, said flat closure member having a leg extending toward the base, fastening means mounted in the main sash member for engaging said leg to yieldably secure said flat closure member in place and for resiliently holding a plate of glass against the plate glass engaging flange extending from the inside perpendicular wall, said fastening means including a lug and a screw for mounting said lug in position within said main sash member, part of said lug engaging the base of the main sash member while another part holds the glass against the glass engaging flange extending from the inside perpendicular wall."

"4. In a metal plate glass setting for store fronts for firmly but resiliently holding large plates of glass in a U-shaped longitudinally extending recess in store fronts to create the appearance of a continuous uninterrupted wall or ceiling surface from outside the store after the plate of glass is installed, the combination of a metal main sash member having a base and spaced apart inside and outside walls perpendicular to the base at its opposite edges, each perpendicular wall extending away from the base substantially the same distance, a plate glass engaging flange extending from the inside perpendicular wall to the glass, a closure member having a relatively broad flat surface positioned with its exterior surface in a plane substantially with the inside glass engaging flange and extending continuously from the glass to the edge of the outside perpendicular wall of the main sash member, said flat closure member having a leg extending toward the base, fastening means mounted in the main sash member engaging said leg to yieldably secure said flat closure member in place and for resiliently holding a plate of glass against the plate glass engaging flange extending from the inside per-

pendicular wall, said last named means including a screw tightening device and a clip."

"7. In a hollow metal plate glass setting for store fronts of the character described, the subcombination of a main metal housing and sash member having a metal base and spaced apart inside and outside metal walls extending perpendicular in substantially the same plane of termination, a metal plate glass engaging flange integrally formed on the inside perpendicular wall and extending at an angle from said perpendicular wall, a relatively broad metal closure member having a flat exterior surface in a plane substantially with the inside glass engaging flange and extending continuously from the glass to the edge of the outside perpendicular wall of the main sash member to provide a continuous space beneath the flange, closure and glass for housing glass clamping means, and means on the closure member for engagement by a closure fastening means."

"9. In a hollow metal plate glass setting for store fronts for firmly holding large plates of glass in a U-shaped longitudinally extending recess in store fronts to create the appearance of a continuous non-interrupted wall or ceiling surface from outside the store front after the plate of glass is installed, the subcombination of a main metal sash member having a base, an inside metal wall extending perpendicular to the base and away from the base substantially the same depth as the recess, a flange on the inside perpendicular metal wall and extending outwardly at an angle therefrom, a metal closure member having a relatively broad flat surface positioned with its exterior surface in a plane substantially with the inside glass engaging flange and extending continuously from the glass to the outer edge of the recess and providing a continuous space beneath the flange closure and glass for housing glass clamping means, and means on the closure member for engagement by a closure fastening means."

The application for the patent in suit was filed March 23, 1946, by Morris Ketchum, Jr., an architect of New York City, who had been retained by the plaintiff in 1943 and who had continued with plaintiff as a consultant on store-front design and development.[1] This patent application contained nine claims. In September, 1947, claims 1 to 7 were rejected as unpatentable over Barclay 2,335,991 and Keil 1,907,117, and claims 8 and 9 were rejected as fully met by Zand 1,991,832. In view of these rejections, Ketchum canceled the nine claims in his application and in March, 1948, through substituted counsel, submitted four new claims numbered 10 to 13. On the request of Ketchum and on the representation that the claims of record were being infringed by a competitor, the patent application was made "special." on May 28, 1948. In June, 1948, the new claims 10 to 13 were rejected as unpatentable over Anderson 1,894,529 on the ground that Anderson "teaches the expedient of having a pane of glass held in place by fastening means, said fastening means being 'adapted to be inserted' into a channeled portion to give the final structure the appearance of a flushed glazed structure." Following this rejection the applicant in August, 1948 (subsequent to the production of the defendant's accused glass settings), canceled claims 10 to 13 and submitted further new claims numbered 14 to 19. Claim 19 was rejected in view of Ernstoff 1,974,238 or Whipple 656,-130. Upon the rejection of claim 19 the applicant submitted claims 20, 21, and 22. Claims 20 and 21 were first rejected in view of Ernstoff or Whipple, but apparently upon amendment were later allowed. The applicant later added claim 23. It may be noted that when new claims 10 to 23 were submitted, no material changes were made in the specifications and drawings which formed a part of the original application. In the patent as finally granted, substituted claims 14, 15, 16, 17, and 18 became claims 1 to 5, and substituted claims 20, 21, 22, and 23 became claims 6 to 9.

The defendant's accused structure is likewise a metal, flush-glazing, glass-setting

means intended principally for store fronts, whereby full vision of the entire store is afforded when viewed from the outside. While alleging invalidity of the patent in suit, the defendant further contends that even if the patent were held valid, its accused glass setting would not infringe.

In considering the question of the validity of the plaintiff's patent the court must recognize that in recent years the decisions of the Supreme Court of the United States show a definite trend toward a higher standard of invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, rehearing denied 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663; United Specialties Co. v. Industrial Wire Cloth Products Corp., 6 Cir., 186 F.2d 426; Foxboro Co. v. Taylor Instrument Cos., 2 Cir., 157 F.2d 226; Trico Products Corporation v. Delman Corporation, 8 Cir., 180 F.2d 529, 533; Trabon Engineering Corporation v. Dirkes, 6 Cir., 136 F.2d 24; Perkins v. Endicott Johnson Corporation, 2 Cir., 128 F.2d 208; In re Shortell, 142 F.2d 292, 31 C.C.P.A., Patents, 1062.

The plaintiff's patent is presumed to be valid, 3 Walker on Patents, Deller's Ed., § 701, page 2009, and the burden is upon the defendant to establish its claim of invalidity by clear and satisfactory proof. Crosley Corporation v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; Spring-Air Co. v. Ragains, D.C., 96 F.Supp. 79, and authorities cited at page 81; Reynolds v. Emaus, D.C., 87 F.Supp. 451; Dennis v. Great Northern Ry. Co., D.C., 51 F.2d 796; 2 Walker on Patents, Deller's Ed., § 276, pages 1272, 1273. However, this presumption of validity is rebuttable, and it should be noted that in the present case the defendant put in evidence certain prior-art patents and publications pertinent to the issue of validity which were not cited and apparently had not been considered by the examiner. There is no presumption of validity over this prior art which the examiner did not consider. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467; Nordell v. International Filter Co., 7

Cir., 119 F.2d 948; R. Hoe & Co., Inc., v. Goss Printing Press Co., 2 Cir., 30 F.2d 271; Reynolds v. Emaus, supra, 87 F.Supp. at page 453; Dennis v. Great Northern Ry. Co., supra, 51 F.2d at page 800; Beauchamp v. Schireson, D.C., 18 F.Supp. 367; Alexander Anderson, Inc., v. Eastman, D.C., 16 F.Supp. 513. Furthermore, the fact that the examiner did not mention any particular prior art does not raise a presumption that he was aware of it and did not consider it applicable. 69 C.J.S., Patents, § 145, page 587. In Himmel Bros. Co. v. Serrick Corporation, 7 Cir., 122 F.2d 740, 745, the court said:

"Plaintiff contends that even though these patents were not cited in the Patent Office, there is a presumption that they were considered. A similar contention has been urged heretofore upon this court and rejected. Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799, 801; Moran v. Protective Equipment, Inc., 7 Cir., 84 F.2d 927, 929."

In H. Schindler & Co., Inc., v. C. Saladino & Sons, Inc., 1 Cir., 81 F.2d 649, 651, the court stated:

"While it is true that the granting of a patent by the Commissioner of Patents carries with it a presumption of validity, if the prior art is not adequately cited in the file wrapper, the presumption is weakened".

In Robinson Aviation, Inc., v. Barry Corp., D.C., 106 F.Supp. 514, 519, the court said:

"The presumption of validity which ordinarily attaches to a patent has been destroyed or greatly weakened by the examiner's failure to cite important prior patents or by the failure of the file wrapper adequately to cite the prior art. See 69 C.J.S., Patents, § 145, page 586; also H. Schindler & Co. v. C. Saladino & Sons, 1 Cir., 81 F.2d 649; O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656; International Flatstub Check Book Co. v. Young & Selden Co., 4 Cir., 284 F. 831."

On the other hand, the presumption of validity of a patent is strengthened

where prior-art references are considered by the Patent Office and rejected as anticipations. 2 Walker on Patents, Deller's Ed., § 249, page 1221. In the present case the "search sheet" of the Patent Office relating to the application for the patent in suit contains the notation "Sweet's Catalog 1944." This catalog is a regular publication which has been published annually for many years and the store-front section of the 1944 issue contained, among many other things, a reproduction of the so-called "Scheick sketches" (hereinafter described) showing means of mounting glass in a store front to give a full view of the interior of the store, thereby creating an example of flush glazing as that term is generally used. From the examiner's notation "Sweet's Catalog 1944" it may reasonably be assumed that he considered generally the illustrations of the many products shown in the store-front section of the catalog, but such notation, standing alone and without any mention of the Scheick sketches, does not indicate that he considered the details of those sketches. From the mere notation "Sweet's Catalog 1944" it cannot be assumed that the examiner considered the details of the Scheick sketches, and the presumption of validity of the patent in suit is not strengthened by this reference. In any event, other anticipating prior art was not cited and apparently not considered by the examiner. With due regard for the presumption of validity arising from the issuance of the plaintiff's patent, the fact remains that when its validity is challenged, the court must determine the question of validity. In Continental Farm Equipment Co., Inc., v. Love Tractor, Inc., 8 Cir., 199 F.2d 202, 204, the court said:

"The opinion of the Patent Office is entitled to and given great weight on the question of the validity of patents issued and the necessary attributes of patentability, including invention. Yet in the final analysis, invention is a question for the courts ultimately to decide."

The plaintiff's patent in suit is clearly a combination patent comprising an aggregation of old elements or parts with some slight changes, modifications or substitutions. To constitute patentable invention these elements, parts, and substitutions must cooperate in such a manner as to produce a new, unobvious, and unexpected result. In the absence of invention, utility and novelty are not alone sufficient to sustain the validity of a combination patent. In the recent case of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, the Supreme Court said, 340 U.S. at pages 150–152, 71 S.Ct. at page 129, 95 L.Ed. 162:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. * * *

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what al-

ready is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments' of prior art and claims them in congregation as a monopoly."

See also Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Continental Farm Equipment Co., Inc., v. Love Tractor, Inc., 8 Cir., 199 F.2d 202; In re Kaufmann, 193 F.2d 331, 39 C.C.P.A., Patents, 769; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971; United Specialties Co. v. Industrial Wire Cloth Products Corp., 6 Cir., 186 F.2d 426. In Spring-Air Co. v. Ragains, supra, this court said, 96 F.Supp. at page 82:

"A device or structure, to be patentable, must be more than new and useful; it must satisfy the requirements of invention or discovery and must represent more ingenuity than the work of a mechanic skilled in the art. (Authorities cited.) An extended application of prior-art teachings, mere perfection of workmanship, a change only in size, form, strength, proportions, degree, or the substitution of equivalents doing substantially the same thing by substantially the same means, does not amount to patentable invention. (Authorities cited.) In Sinclair & Carroll Co., Inc., v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, the court said: 'A long line of cases has held it to be an essential requirement for the validity of a patent that the subject-matter display "invention", "more ingenuity * * * than the work of a mechanic skilled in the art." * * * This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee.'"

A patentee is presumed to know and is chargeable with knowledge of everything disclosed by the prior art. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F.2d 380; Cutler Mail Chute Co. v. Capitol Mail Chute Corporation, 2 Cir., 118 F.2d 63; Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422.

Flush glazing is not a scientific term describing an exact mechanical device or thing; rather, it is an esthetic term generally used to connote full, unobstructed vision through glass, such as the view through a store window. The basic idea of flush glazing, that is, the mounting of glass in a recess or channel in a wall or ceiling without a visible holding frame, so as to afford a passer-by full view of the interior, is old in the art of glass setting. There is testimony in the present case that examples of flush glazing existed in the ancient Gothic and Norman churches where the glass was mounted in grooves cut in the stone. Later, glass was mounted in frames of wood or iron, and still later in all-metal sash. In the 1930's there was considerable development and change in the methods of setting glass in store fronts, whereby the glass was mounted in U-shaped channels in the walls and ceiling without any apparent sash or molding, thereby affording full view of the interior of the store when viewed from the outside. Publications about 1936 showed actual store-front installations embodying flush glazing. In some instances the glass was inserted in U-shaped channels and held in place by filling the channels with glazing compound or putty; in other instances the channels were partially filled with a closure member. The testimony shows that flush glazing accomplished through the use of a U-shaped, recessed metal channel member and a metal closure member with its face in the plane of the wall or ceiling has been in public use since 1939. The publications, "Store Design," "Architectural Record," "New Pencil Points," and "Reports on Two Architectural Competitions," put in evidence in the present case illustrate prior-art methods of flush glazing.

In 1939 patentee Ketchum designed and supervised the installation of the Steckler store front in New York City, in which flush glazing was accomplished by mount-

ing the glass in a U-shaped metal channel in the wall, the glass being held in place in the channel by the use of putty. This installation in the Steckler store was shown in the December, 1939, edition of the magazine "Architectural Forum" and in the November, 1940, issue of the magazine "Pencil Points." There is conflict in the testimony as to whether the Steckler type of glass installation is practicable, the plaintiff contending that putty or other glazing compound inserted in a recessed metal channel hardens in time and subjects the glass to breakage from shock, air pressure or changes in temperature because of the lack of resiliency of the setting. This contention was refuted by other testimony to the effect that glass installations using putty or other glazing compounds have been successfully demonstrated as being entirely practicable, and that true flush glazing with the best esthetic appearance could be accomplished by using a glazing compound. Defendant's witness Lapidus, an architect conversant with store-front installations, testified in part:

"I use both the Kawneer (plaintiff's) and the Pittsburgh (defendant's) flush glazing member, when the transition is not too important, but, as I have shown in these exhibits, which are of my own work, as late as jobs finished several months ago, I still feel that to achieve true flush glazing I prefer the channel and mastic or glazing compound to either the Pittsburgh or Kawneer flush glazing member."

On August 26, 1937, one V. E. Peterson, an employee of the plaintiff, applied for a patent on sash construction, and patent No. 2,185,735 was issued January 2, 1940. Sash in accordance with this patent was manufactured and sold by the plaintiff. The functioning of the parts of Peterson really disclosed and anticipated the mechanical details of the Ketchum patent in suit. The leg of Ketchum, part 14, appears to be merely an equivalent of the leg, part 16, of Peterson. The flat closure member, parts 11 and 12, of Ketchum is substantially a copy of the relatively broad closure member, parts 3 and 9, of Peterson. The resilient lug, part 17, of Ketchum is merely an

equivalent of the resilient bracket, part 5, of Peterson. It seems clear that the principal differences between the Peterson patent and the patent in suit are in the position and form of their respective elements, the function of the elements being substantially the same.

In 1942 the plaintiff, in collaboration with the magazine "New Pencil Points," sponsored an architectural competition for "Store Fronts of Tomorrow," and architects were invited to submit their designs for stores and store fronts with suggested details as to construction. In this competition architect Morris Ketchum, Jr., the patentee of the patent in suit, who had been retained by the plaintiff as a consultant on store-front design, was a member of the jury of awards and was made chairman of the jury. This competition closed in January, 1943. One William H. Scheick had submitted sketches of a store-front design which was awarded first honorable mention. The Scheick design, which of course came to the attention of patentee Ketchum, illustrated, among other things, the details relative to a means of mounting glass in a recessed metal channel without the use of putty or other glazing compound, so as to afford a full view of the interior of the store from the outside. The sash assembly shown in the Scheick design appears to be in most respects substantially identical with the sash shown in Peterson, and the Ketchum patent in suit is clearly an extended application of the prior-art teachings of Peterson and Scheick. There is ample testimony indicating that a mechanic skilled in the art of glass setting and conversant with the Peterson patent and Scheick sketches could, with slight modifications in the elements or parts but not in their function, create a glass-setting assembly in full accord with the claims of the Ketchum patent.

Furthermore, Murnane 1,003,195 and Murnane 1,008,984 issued in 1911 describe resilient, metal glass settings whereby an inner, glass-engaging flange and the top surface of the face or closure member are mounted flush with the adjacent wall or ceiling. In Murnane 1,003,195 the draw plate is integral with the face member,

while in Murnane 1,008,984 the draw plate is separate and functions substantially like the lug, part 17, in the patent in suit. Murnane 1,008,984 indicates a construction showing easy adjustment and retention of the clamping member in position and states that the entire assembly can be completed at the factory for shipment to the place of installation. These same features of pre-fabrication and installation are claimed as an element of novelty of the glass-setting means of the patent in suit. Schlacks 1,724,374 issued in August, 1929, shows the use of a channel-shaped member with an integral glass-engaging flange. Reuter patents 1,589,560 issued in June, 1926, and 1,699,021 issued in January, 1929, illustrate the use of metal glass settings with an inner glass-engaging flange, the face member of the setting having a broad, flat exterior surface in a plane with the engaging flange. Furthermore, Reuter 1,699,021 could apparently be mounted in a recess or channel, and claim 9 of the patent in suit is at least in part anticipated by Reuter. Young 1,689,611 issued in October, 1928, illustrates a metal plate-glass-setting means whereby the flange engaging the inner side of the glass is set flush with the adjacent sill or wall and the face closure member with a relatively broad, flat exterior surface is in substantially the same plane as the interior flange and the sill or wall. Nelson 1,649,915 issued November, 1927, illustrates a glass-engaging flange mounted in the plane of the adjacent sill, with the surface of its face member in substantially the same plane, the two parts engaging the glass being drawn together with a draw-plate mechanism substantially similar to that in the patent in suit.

An all-metal glass-setting assembly which can be prefabricated at the factory, ready for shipment to the job for immediate installation, as claimed in the patent in suit, is shown in Peterson, Murnane 1,008,984, Nelson, Young, Toney 2,015,769 and 2,268,269, Plym 852,450 and 879,898, and Rhoads, and in the Scheick sketches. The patent in suit provides for the mounting of a plate of glass larger than the opening in a store front, but such a structure is also illustrated in the prior art and particularly in the Scheick sketches and in the Steckler and other store-front installations. The mechanical features of the patent in suit for holding the glass in the metal channel member without the use of putty or other glazing compounds are illustrated in Peterson, Young, Toney 2,015,769 and 2,268,269, Nelson, Murnane 1,003,195 and 1,008,984, Rhoads, Plym 852,450 and 879,898, and in the Scheick sketches. The plaintiff claims that its patent provides a glass-setting means that can easily be disassembled for the purpose of removing broken glass and installing new glass. The prior art, Rhoads 946,734, Reuter 1,699,021, the Scheick sketches, and other prior-art patents also illustrate practicable means of replacing broken glass. The most that may be said for the patent in suit is that it provides a mechanical means of flush-glazing glass setting without the use of putty or other glazing compounds. However, this mechanical means is clearly anticipated in the prior art. In Shaffer v. Armer, 10 Cir., 184 F.2d 303, at page 307, the court said:

"'The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts.' Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438. The device must not only be 'new and useful,' it must also amount to 'invention or discovery,' Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76; and 'perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 356–357, 23 L.Ed. 719; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58. And to make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 10, 67 S.Ct. 6, 91 L.Ed. 3. Hollywood-Maxwell Co. v. Streets of Tulsa, 10 Cir., 183 F.2d 261."

Mere difference in design and construction of patented device over prior art, involving no new principle and accomplishing nothing more than what one skilled in the art would readily discern, does not amount to invention. H. W. Gossard Co. v. Loeber's Inc., 7 Cir., 114 F.2d 166, certiorari denied 312 U.S. 680, 61 S.Ct. 450, 85 L.Ed. 1119. Trivial modification of a product does not show invention. Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880.

See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Himes v. Chadwick, 9 Cir., 199 F.2d 100; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971; Minneapolis-Moline Co. v. Massey-Harris Co., D.C., 107 F.Supp. 673.

In summary, the patent in suit is a combination patent, combining an aggregation of old elements or parts from the prior art with slight, unpatentable modifications or variations in design, construction or position but without material change in their respective mechanical functions. The plaintiff is now claiming this aggregation of old elements or parts as a monopoly. The combination does not constitute patentable invention within the meaning of the patent law. The patent adds little, if anything, to the total stock of knowledge in the field of glass-setting means.

In the absence of invention, any commercial use or success the plaintiff's device may have achieved will not entitle it to a patent monopoly on its combination of old elements or parts. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 163, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Byrne Mfg. Co. v. American Flange & Mfg. Co., Inc., 6 Cir., 87 F.2d 783, 785; United Drug Co. v. Ireland Candy Co., 8 Cir., 51 F.2d 226, certiorari denied 284 U.S. 683, 52 S.Ct. 200, 76 L.Ed. 577.

For the reasons herein stated the court concludes that all claims of the plaintiff's patent in suit are invalid because of prior-art anticipation and because lacking invention. The question of infringement does not arise, as an invalid patent cannot be infringed.

In view of the court's conclusion that the claims of the patent in suit are invalid because of prior-art anticipation and lack of invention, it is unnecessary to consider the defendant's further contentions that the patent is invalid because of the ambiguity of its claims and because patentee Ketchum was not the real inventor.

Judgment will be entered dismissing the plaintiff's complaint, and determining under defendant's counterclaim that all claims of the patent in suit are invalid. The defendant is entitled to recover court costs but not costs of suit.

### Findings of Fact.

1. The plaintiff is the owner of Letters Patent 2,463,284 for "glass setting means."

2. This is a combination patent, combining elements and parts old in the art of glass setting, with slight modifications or changes in the mechanical means for holding the glass in a metal channel without the use of putty or other glazing compounds.

3. This combination of old parts and elements with these slight modifications or changes in design and construction or position, but without change in mechanical function or result, does not represent discovery or invention within the meaning of the patent law and does not entitle plaintiff to a patent monopoly on the entire combination.

4. This patent for a glass-setting means lacks such novelty, utility, and advance in the art as is necessary to establish invention.

5. The glass-setting means described in this patent was fully disclosed and anticipated in the prior art and represents only the mechanical skill of one conversant with the art.

6. The court finds no justification for the issuance of the patent in suit.

7. All claims of the plaintiff's patent are invalid.

Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. The plaintiff's patent is a combination patent and should be strictly construed.

3. The means of glass setting described in plaintiff's patent does not represent discovery or invention within the meaning of the patent law.

4. The glass-setting means described in plaintiff's patent was fully anticipated in the prior art and represents only the work of a mechanic skilled in the art of glass setting.

5. All claims of the plaintiff's patent are invalid.

6. As the plaintiff's patent is invalid, it is not infringed.

7. The defendant is entitled to a judgment dismissing the complaint, and under its counterclaim defendant is entitled to a declaratory judgment determining that all claims of the patent in suit are invalid. The defendant may recover court costs but not costs of suit.