MORAN et al. v. PROTECTIVE EQUIPMENT, Inc., et al.

No. 5644.

Circuit Court of Appeals, Seventh Circuit.

June 24, 1936.

George Heidman and George A. Chritton, both of Chicago, Ill., for appellants.

Edward C. Grelle, of Chicago, Ill., and Howson & Howson, of Philadelphia, Pa., (Kennard N. Ware and Charles H. Howson, both of Philadelphia, Pa., of counsel), for appellees.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

This was an action for infringement of all the claims of United States Patent No.

1,800,558, issued to Moran and Lee on April 14, 1931, upon an application filed February 10, 1930. The answer was invalidity and non-infringement. The court found the patent invalid for want of invention, and for that reason did not pass on the issue of infringement. There were four claims, of which 3 and 4 are typical.[1]

The invention relates to improvements in workmen's goggles for use when working with welding torches abrading or emery wheels and the like. The primary object of the alleged invention is the protection of the ordinary eye glasses or spectacles of those workmen who habitually use them while working.

The alleged invention consists in forming the walls of the two eye-cups at the outer or temple sides with side wall extensions to provide channels or recesses for the side-arms or temple pieces of the spectacles to accommodate the temple pieces or side-arms of the wearer's spectacles without pressing against the temple pieces; and in forming the inner or nose sides of the lens holders or eye-cups with lateral extensions or slotted flanges disposed toward the bridge of the nose, with the encircling walls at the top extending toward the ends of the extensions or flanges to provide a closure at the top between the extensions and the wearer's face. The walls are cut away beneath the extensions or flanges to receive the flaring sides of the nose to permit the eye-cups to fit snugly against the side of the nose. The extensions or flanges extend across the bridge of the nose and provide the channel for the spectacle nose-bridge, effecting a closure for the inner end of the eye socket; the perimeters of the eye-cup walls prevent contact of the lateral extensions with the nose-bridge of the wearer's spectacles.

The device of the patent consists of a pair of goggles. It comprises two lens holders or circular frames, each of which contains a set of two removable lenses, the lens holders being connected with an adjustable strap. The only respect in which it is claimed that the device differs from the well-known industrial goggle is that the lens holders are so shaped as to provide such clearances as are necessary to permit their use over spectacles, without interference. This is accomplished by omitting or cutting away the circular wall of each holder at its inner side to furnish a clearance for the spectacle nose piece, and by forming a laterally extended portion to provide a channel or housing for the spectacle side-arms.

Every element here disclosed was quite old in the art at the time of patentee's disclosure. This conclusion is well supported, not only by numerous prior use structures and prior art publications which were in evidence, but also by the following patents: No. 1,168,581 to Troppman; No. 1,254,296 to Willson; No. 1,338,505 to Ihrcke; design patents to Willson, Nos. 55,104 and 79,272; and No. 1,467,230 to Cozzens. It is true that none of these exhibits discloses a structure which is identical in detail with the patent in suit, but as a whole, they disclose every principle, means, and detail found in the patent, or their equivalents. Furthermore, we are convinced that the "Willson Over-All Goggle," referred to in the record as Exhibit 1, considered both structurally and functionally, is the equivalent of the patented device. The structural differences seem to us to be inconsequential, and it is obvious that they are due to the fact that the former is made of rubber, while the latter is made of bakelite or some similar material. However, these materials were all old in the goggle art, and it is worthy of note that the material to be used is not limited by the claims.

The detailed description of the patent,

[1] "3. A goggle of the character described adapted to fit over the spectacles of the user and comprising a pair of lens holding members yieldingly secured together at the inner sides; the walls of the members at the inner sides having portions disposed laterally toward each other, with the side walls increasing in width from the upper edges of the laterally disposed portions toward the outer sides and terminating on the bottom of the goggle adjacent to said laterally disposed portions so as to provide a spectacle nose-piece receiving channel; while the members at the outer sides are formed to provide spectacle side-arm receiving channels.

"4. A goggle of the character described adapted to fit over the spectacles of the user and comprising a pair of lens holding members whose walls at the inner sides are formed to provide a spectacle nose-bridge receiving channel; yielding means secured to said channel providing portions for securing the members together; said members at their outer sides beyond the lens holding portions being laterally extended to provide spectacle side-arm receiving portions."

tersely stated, merely contemplates the formation and construction of goggles in such manner as to closely and snugly fit and conform to the face without uncomfortably or unduly contacting the workman's correction spectacles. The obvious requirements of such construction were that the goggles should snugly conform to the bony structure of the face, and be sufficiently roomy to clear the spectacles, more particularly, the hinged connection for the temple pieces and the nose bridge. To accomplish this end, in view of the disclosures of the prior art, required the exercise of but ordinary mechanical skill, which was specifically taught by Willson. Considered as a combination patent, it does not arise to the dignity of invention because the elements are quite old, and they produce no new result, nor do they produce any old result in a more facile or economical manner.

The presumption of validity which arises from the issuance of the patent can not be permitted to stand as against the pertinent prior art disclosed by this record, which was not before the patent office.

We approve of the District Court's ruling in holding the patent invalid for lack of invention. It is unnecessary to pass on the question of infringement.

Decree affirmed.