## DICKSON GASKET CO. v. DE BOER MOTORS, Inc.

### No. 6364.

Circuit Court of Appeals, Seventh Circuit.

May 24, 1938.

Parker & Carter, of Chicago, Ill. (Francis W. Parker, Jr., and Leslie M. Parker, both of Chicago, Ill., of counsel), for appellant.

216

Clarence J. Loftus, Wallace R. Lane, and Thomas D. Huff, all of Chicago, Ill., for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

By this action appellant sought injunctive relief and an accounting for profits and damages arising from an alleged infringement of United States Patent to Dickson, No. 1,782,870. The patent was issued November 25, 1930, on an application filed September 10, 1928, and was assigned to appellant on November 7, 1935. The defenses were invalidity and non-infringement. The patent has but one claim. The court found and adjudged it invalid because (1) it was anticipated by the Chrysler prior use, and (2) it did not differentiate patentably from the prior art. From that decree this appeal is prosecuted.

The alleged invention relates to that type of gaskets employed in providing tight joints between the parts of spark plugs, cylinders, and the like, of high compression internal combustion engines, in which the gaskets are exposed to excessive temperatures and pressures. Its object is to provide a durable and effective joint between the ordinarily irregular and somewhat rough surfaces of the structures to which it is applied.

Prior to this disclosure, in packing gaskets for spark plugs and other parts of internal combustion engines, a thin annular shell of copper, or like ductile metal, held the inner filling or packing in proper position. In this patent the enclosing shell may be of different detail formations, preferably of the open peripheral formation, or if desired, it may be of closed formation, in which the four walls of the annular cavity of the shell are integrally connected to constitute a closed cavity of a substantially rectangular shape. The alleged feature of improvement consists in the filling or packing for the shell. This is formed of a plurality of thin and pliable annular sheets of copper, or like ductile metal, adapted to resist fusion under high temperatures, while the arrangement and tenuity of the sheets adapt the gasket to yield in any portion to fit and closely contact with any irregularities that may exist in the surfaces of the joint, so that the gasket will adjust itself readily to such irregularities, and when heated will expand to attain an effective joint against pressure. The number of metal sheets comprising the filling may be of any desired number. The claim is:

"A gasket comprising a binding shell of ductile metal and a filling formed entirely of a plurality of thin pliable laminae of ductile metal arranged in flatwise contact one with the other, said laminae being sufficient in number and having a degree of tenuity to provide for adjustment by compression to irregularities of surfaces between which used, while at the same time providing for variation in thickness of the uncompressed portions sufficient to effect a tight joint."

Appellee's accused structure is not a spark plug gasket, but it is a cylinder head gasket of relatively large area, provided with water holes, bolt holes and combustion openings. It consists of sheets of thin copper with a thin copper binding shell of about the same thickness as that of the sheets. Appellant admits that it is substantially identical with the Chrysler all metal laminated gasket, used in 1926 and 1927, on Chrysler's marine racing boat high compression engines. However, appellant contends that that use was not proved to have been a public commercial use.

We start with the presumption of validity of the claim because of its allowance by the Patent Office. This, however, is substantially weakened by the fact that the Chrysler use, if proved, was not before the Patent Office when the claim was allowed. Moran v. Protective Equipment, Inc., 7 Cir., 84 F.2d 927.

The McCord Radiator and Manufacturing Company is appellant's present licensee. During 1926 and 1927, and for a long time prior thereto, it supplied the Chrysler Corporation with its requirements for copper asbestos gaskets, that is to say, the asbestos constituted the filling of the copper shell. These were then universally used, and are still universally used by Chrysler in all of its automobile motors. In 1926 Mr. Walter P. Chrysler became interested in racing boats. The Chrysler Corporation thereupon, in 1926 and 1927, designed, reduced to practice, commercially used under quite severe tests, and sold Chrysler marine engines in racing boats. They were equipped with all laminated gaskets having a binding shell around the waterways and combustion openings. The

shells were about .015 of an inch in thickness, and were filled with all metal laminations of thin, pliable and ductile copper, consisting of three sheets about .010 of an inch in thickness. They were made by McCord Radiator and Manufacturing Company.

In 1926 Chrysler's all metal laminated gaskets were provided with a binding shell around the waterway openings, and were used satisfactorily on several of its high compression marine motors which were used in the speed boat Miss Frolic during the summer of 1926, and when that boat was raced in the gold cup race, at Manhasset, Long Island, in August, 1926.

Before March, 1927, the Chrysler Corporation had made, by the McCord Radiator and Manufacturing Company, other of these same gaskets except that there was a binding shell around the combustion openings as well as the waterways. They were used in Chrysler high compression marine motors installed in the racing boats Joan I, Scalawag, Baby Frolic, Rough Neck, Wildcat and others, all of which were operated and raced in 1927. They were thus put to a very severe test because of the extreme high compression in the motors, and they gave complete satisfaction. In November, 1927, Joan I was shipped to France; Wildcat and Scalawag were shipped to Honolulu on March 23, 1929; and other Chrysler high compression racing boat motors so equipped were sold in and about Detroit, Michigan, after the races of 1927.

On February 8, 1928, more than seven months before Dickson filed his application, and in the second year after Chrysler had designed, reduced to practice, sold and commercially used its marine engine equipped with its all metal laminated gaskets, Woolson, the chief engineer of Chrysler Corporation, filed his application in the United States Patent Office illustrating an all metal laminated gasket, with laminations made entirely of thin, ductile copper sheets, showing, among other forms, a binding shell of thin, copper, ductile metal having a filling of three thin laminations of copper. On this application, Patent No. 1,840,147 was issued to him on January 5, 1932.

Appellant contends, however, that although Woolson antedated Dickson in his application, the latter antedated the former as to issuance; that both were in the same division, and handled by the same examiner; that Woolson's claims do not cover the vital portion of Dickson's claim; and regardless of Woolson's illustrations in his application of Dickson's disclosures, he must be considered as having dedicated to the public that which he disclosed and did not claim. The record shows that in order to obtain his patent Dickson was compelled to limit his claim to a filler "having a degree of tenuity to provide for adjustment by compression to irregularities of surfaces between which used." Conceding for the moment, without admitting, that there is a vital difference between the two patents, and that Woolson is not in any manner confirmative of the Chrysler prior use, yet the evidence, aside from Woolson's disclosures, convinces us that there was a public commercial use by Chrysler properly established, and since appellant admits it to be in conflict with its grant, the patent can not stand. We think appellant's contention that the Chrysler use was merely an abandoned experiment is without support. It was a successful experiment for the purposes for which it was designed, and was and is now so regarded by those who participated in it.

It is unnecessary to consider in detail the prior art relied upon. It is sufficient to say that a study of the prior art patents to Haynes, 1,050,132, Thomas, 1,381,252, Fisher, 1,504,335, Bailey, 1,587,626, and 1,589,040, none of which were before the Patent Office when Dickson was under consideration, convinces us that Dickson contributed nothing new to the art beyond that which a mechanic skilled in the art could and would have readily done. To this list should also be added Woolson. His claims and disclosures can not easily be distinguished from Dickson, except in a very technical and unsubstantial sense. No attempt was made to carry Dickson's filing date back to that of Woolson, and we think that if invention was disclosed by either, Woolson must be considered as the real inventor.

Decree affirmed.