**ROHR AIRCRAFT CORPORATION and The Franklin C. Wolfe Company, Inc., Appellants,**

v.

**RUBBER TECK, INC., Rubber Teck Sales and Service Co., Paul A. Karres, Otto R. Grass and Joe P. Kerley, Appellees.**

**RUBBER TECK, INC., Rubber Teck Sales and Service Co., Paul A. Karres, Otto R. Grass and Joe P. Kerley, Appellants,**

v.

**ROHR AIRCRAFT CORPORATION and The Franklin C. Wolfe Company, Inc., Appellees.**

No. 15884.

United States Court of Appeals
Ninth Circuit.

April 21, 1959.

**614**

Fulwider, Mattingly & Huntley, John M. Lee, Robert W. Fulwider, Los Angeles, Cal., for appellant.

Fred H. Miller, Stanley A. Phipps, Los Angeles, Cal., Alfred D. Williams, Long Beach, Cal., for appellee.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

Rohr Aircraft Corporation and The Franklin C. Wolfe Company, Inc., filed an action in the District Court of the United States for the Southern District of California for a patent infringement and unfair competition against Rubber Teck, Inc., and others. All of the defendants denied the charges, and certain of the defendants, to-wit, Paul A. Karres, Otto R. Grass, and Joe P. Kerley, filed a counterclaim against the plaintiffs for false marking.

The District Court entered judgment dismissing plaintiffs' complaint and defendants' counterclaim, holding that the patent in suit was invalid for lack of invention, that there was no unfair competition, and held also that the counterclaim of defendants was without merit. Both plaintiffs and defendants below filed proper notices of appeal from the dismissals of the complaint and counterclaim, respectively. Jurisdiction of the District Court was based on 28 U.S.C. § 1338(a) and (b)[1] and on 15 U.S.C.A.

1. 28 U.S.C. § 1338. "Patents, copyrights, trade-marks, and unfair competition.

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

§ 1121,[2] § 1126(h) and (i).[3] The judgment being final, this court has jurisdiction under 28 U.S.C. § 1291. Rohr and Wolfe will be referred to herein by name or as plaintiffs, and defendants will be referred to herein by name or as defendants.

The appeal and the cross-appeal will be dealt with separately.

### The Appeal of Plaintiffs Rohr and Wolfe

#### I. Validity of Plaintiffs' Patent.

The patent in suit, No. 23906005, was issued March 5, 1946, to Rohr Aircraft Corporation upon an application therefor filed October 2, 1944, by Gross and Cornwall, who were at the time employed by Rohr.

The patented device relates to a fastener seal to prevent fluid leakage through the opening around bolts, rivets and the like. It has particular application for the sealing of fuel tanks and the fluid-tight compartments in airplanes.

The patent contains two claims, of which only Claim 1 is in issue. Claim 1 reads as follows:

"1. Means for sealing the walls of a tank secured between the head and shank of a fastener, comprising, in combination, a washer of rigid material having a central bore, surrounding the shank of the fastener and adapted to make rigid contact with the head of the fastener and a tank wall, and a rubber-like doughnut shaped ring positioned within the bore of the washer, said ring having a diameter greater than the thickness of said washer and being confined in said washer with opposite sides thereof normally protruding from the opposite faces of the washer, whereby upon the underside of the head of the fastener compressing the rubber-like ring against a portion of one contiguous wall of the tank being fastened together, said ring is deformed into sealing contact with the bore of the washer, the shank, the head of the fastener, and said contiguous portion of said wall."

In 1943 Rohr was given the task of constructing integral fuel tanks in the PB2Y3 aircraft. Prior thereto, fuel for the aircraft had been placed in containers within the wings, and it was hoped that by the development of a proper seal the container holding the fuel could be elim-

---

2. 15 U.S.C.A. "§ 1121." Same; jurisdiction of Federal courts.
   "The district and territorial courts of the United States shall have original jurisdiction, the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

3. 15 U.S.C.A. "§ 1126." International conventions—Register of marks communicated by international bureaus
   \* \* \* \* \*
   "(h) Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

"(i) Citizens or residents of the United States shall have the same benefits as are granted by this section to persons described in subsection (b) of this section." 15 U.S.C.A. § 1126.
"(b) Persons who are nationals of \* \* \* any foreign country, which is a party to (1) the International Convention for the Protection of Industrial Property, signed at Paris \* \* \*; or (2) the General Inter-American Convention for Trade Mark and Commercial Protection signed at Washington \* \*; or (3) any other convention or treaty relating to trade-marks, trade or commercial names, or the repression of unfair competition to which the United States is a party, shall be entitled to the benefits and subject to the provisions of this chapter to the extent and under the conditions essential to give effect to any such conventions and treaties so long as the United States shall continue to be a party thereto, except as provided in the following subsections of this section."

inated. Rohr proceeded with the problem as presented and obtained the patent in suit on a two-piece seal consisting of an outer flat metallic washer and an inner rubber O-ring. The O-ring was circular in cross section and slightly thicker than the thickness of the metallic washer. Defendants, or their predecessors, were given the job of manufacturing the patented seals for the plaintiffs.

As indicated in the drawings of the patent in suit, the "rubber-like doughnut shaped ring" to be placed within the metal washer was circular in cross section prior to pressure being applied on the bolt, but after the bolt was tightened the rubber ring was deformed by the pressure and assumed a shape rectangular in cross section. When tightened, all spaces around the shank of the bolt and under the head of the bolt were filled by the rubber ring, thereby providing a seal preventing liquid from leaking from the tank.

The device is described in the patent in suit as follows:

"Our head seal consists of a metal flat washer, and doughnut shaped rubber-like washer which fits inside of the metal washer. This assembly is placed under the head of the screw, bolt, or rivet prior to installation and the screw or bolt tightened until a firm metal bearing is obtained between the head, the metal washer and its faying surface. During the tightening, the doughnut shaped rubber-like washer assumes the shape of the rectangular channel inside of the metal washer between the head and the surface to which the washer has been attached. The cross section area of the rubber-like washer and the channel inside of the metal washer has been so designed that after the screw, bolt, or rivet has been tightened, the rubber-like material will not only fill the channel, but will represent a rubber-like packing under compression similar to a gland packing."

As stated in the patent, "the rubber-like washer is of such shape and extent that upon the tightening of the nut * * * the head of the bolt will be drawn down upon and will compress the body of said washer against the walls with which it is in contact, so that the same will effect perfect sealing * * *."

For several years the defendants manufactured the seals for the plaintiffs. In the language of the District Court's findings—

"Subsequent thereto defendants or their predecessors fell out with plaintiffs, lost the contract to manufacture the patented seals and thereafter began the manufacture of their own seals."

The defendants successfully contended in the District Court that the patent in suit was invalid for lack of invention. They contend that the patent in suit was anticipated by the prior art in the following patents: British patent to Aircraft Components Limited, and Frederick Edward Killner, No. 537,654; United States patent to Seligman, No. 2,191,044; United States patent to Hart, No. 67,539; and United States patent to Hart, No. 128,391.

In the Killner patent there was placed within an outer metallic ring or washer a rubber ring that was thicker than the washer or confining ring, so that on tightening, the rubber ring was deformed into a sealing engagement with the surfaces that must be sealed against leakage.

The Killner patent describes a washer for the sealing of a union or conduit connection. It describes a rubber ring that fits within a steel ring that is axially shorter than the rubber ring. By the pressure of tightening, the rubber ring is prevented by the metal washer from spreading outwards and is compressed "in an inward sense."

The difference in appearance between the rubber ring of the patent in suit and the rubber ring of Killner is that in the former, initially, before pressure is

applied, a cross section of the rubber ring would be round, while under the Killner patent under the same conditions it is rectangular.

However, after pressure is applied to tighten the bolt, a cross section of each rubber ring would be rectangular. The patent in suit differs from the Killner patent only in having the four corners of the Killner ring rounded off.

Plaintiffs concede that the use of an O-ring is not new, and the use of a metal washer as a bearing member is not new, but they contend that together they produce new and additional results.

Plaintiffs allege these results to be (1) The ring serves to center the assembly on the shank of the bolt, thus providing an annular channel of uniform width into which the ring may be deformed; and (2) The ring is deformed gradually from a round to a rectangular shape and the washer limits this deformation to prevent extrusion.

The defendants deny that there are any new or additional results. They point out that bolt shanks are not precisely made and that O-rings are not precisely made; each of them is made only within manufacturing tolerances. They point out further that rubber in an O-ring can be deformed in a circumferential direction as well as in a radial direction, and that even if the space from the inside wall of the washer to the bolt shank is narrower in one place than the other, that the pressure will deform the rubber around the bolt shank. It may be also mentioned that nowhere in the patent in suit is there any mention of the self-centering ability of the patented seal.

In the Seligman patent, the idea of an inner compressible material, such as soft rubber, within a hard or non-compressible retaining frame was set forth.

In the Seligman patent it was provided in part as follows:

"10. A spacing member for built-up plate-type apparatus, comprising an open frame of hard non-compressible material having resilient rubber gasket material joined to the inner edge of the frame opening, said hard non-compressible material extending outwardly beyond the gasket material sufficiently to serve as a rigid beam resisting outward displacement of the gasket material and being of a thickness substantially equal to the thickness of the gasket in its compressed condition to resist outward displacement of the gasket material relative to the hard noncompressible material."

In the Hart patent, No. 67539, there was an inner rubber packing which was prevented from spreading by an outer washer. A specification in that patent is set forth in the margin.[4]

In each of the Hart patents the rubber ring which is contained within the surrounding metal ring is thicker than the metal ring, and when pressure is applied by tightening the bolt the rubber ring is deformed.

The Hart patents refer to lock washers to prevent loosening of bolts and nuts, but to use them as liquid seals would be only a new use of an old device.

Neither the Killner patent, the Seligman patent, nor either of the Hart patents was cited or apparently considered by the examiner in his examination of the application for the patent in suit. The significance of this fact is illustrated by the following statement in Boynton v. Chicago Hardware Foundry Co., 7 Cir., 1935, 77 F.2d 799, 801:

"We are not unmindful of the presumption of validity which attaches to the patent by virtue of its issuance, but that presumption cannot stand against pertinent art which

4. "It consists in forming a groove, channel, or chamber in the washer commonly used on bolts, or in the washer and nut combined, and filling said channel with an India rubber or other elastic packing, and so as that it (the packing) will not spread laterally outward, or arranging it so that, if desirable, said packing may spread laterally inward and press against the sides of the bolt; and thus afford additional hold, as will be explained."

was not considered by the Examiner."

In Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632, 634, this Court said:

"But further, a great many of the patents, which were brought to light in this lawsuit and considered by the Trial Court, had not been previously considered by the Patent Office. *Even one prior art reference, which has not been considered by the Patent office, may overthrow the presumption of validity*, and, when the most pertinent art has not been brought to the attention of the administrative body, the presumption is largely dissipated. Such is the case here." [Emphasis added.]

See also Moran v. Protective Equipment, 7 Cir., 1936, 84 F.2d 927; McClintock v. Gleason, 9 Cir., 1938, 94 F.2d 115; and Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 5 Cir., 1955, 224 F.2d 331.

The rubber ring in the Killner patent has squared corners. Plaintiffs' expert testified, however, that ordinary manufacture could often result in rounded corners "unless they were particular about achieving exactly square corners."

He also admitted that the ring in the Killner patent would be doughnut shaped "if you shaved off the corners."

"Q. How much rounded corners do you have in order to get it to work like Gross [the patent in suit]? A. Well, that is like saying how high is up. I don't know just where the dividing line is."

It is interesting to note that neither in the patent in suit nor in the patents which have been mentioned herein was there any statement of how much thicker, percentage-wise, or otherwise, the rubber ring should be than the surrounding metal washer. As the District Court said in its findings—

"The determination of the amount of rubber required to fill a void between a metallic washer and the shank of a fastener can be determined either mathematically or by trial and error."

The District Court found that "The prior art discloses that prior to plaintiffs' patent (patent in suit), rubber rings had been inserted inside steel washers."

The nature of the prior art and what plaintiffs did to improve upon it, of course, are questions of fact.[5] However, such questions are preliminary to the ultimate question of invention.[6] Plaintiffs' improvement over the prior art, as we have seen, allegedly is a result of its "doughnut shaped ring." The question we now reach is whether plaintiffs' "doughnut shaped ring" is such a

---

5. See Judge Pope's concurring opinion in Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1958, 251 F.2d 801 at page 809, et seq.; Cee-Bee Chemical Co., Inc. v. Delco Chemicals, Inc., 9 Cir., 1958, 263 F.2d 150; Alvarado Sales Co. v. Rubaloff, 9 Cir., 1959, 263 F.2d 926; Elrick Rim Co. v. Reading Tire Machinery Co., Inc., 9 Cir., 1959, 264 F.2d 481.

6. Deller's Walker on Patents, 1957 Supp. to Vol. 1, § 25, page 115:
"The conflict between the statement that the question of invention is one of fact and the almost innumerable instances in which the courts have dealt with it as though it were one of law, can only be explained by breaking the question of patentable invention down into its component parts: what the prior art was and what the patentee did to improve upon it, and then, whether what the patentee did is properly to be classified as an invention. The nature of the prior art and the nature of what the patentee did to improve upon it must always be questions of fact. The question of the name to be given to what was done by the patentee, whether it is to be called an invention over the prior art or whether it is not, is a question fundamentally of the meaning of the words used in the statute [35 U.S.C. § 31], and as such would seem to be a question of law." [Brackets in original.]

significant advance over the prior art as to raise it to the standard of invention. Since the Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 131, 95 L.Ed. 162, there is no longer any doubt that such a question is one of law.[7]

■ In the Great Atlantic & Pacific Tea Co. case, the Supreme Court cited and approved language from Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545 at page 549, 58 S.Ct. 662, at page 664, 82 L.Ed. 1008. That language is particularly apt in the instant case.

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. *And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination.*" [Footnotes omitted. Emphasis supplied.]

**7.** See Justice Douglas' concurring opinion in The Great Atlantic & Pacific Tea Co. case, which begins with the following:
"It is worth emphasis that every patent case involving validity presents a question which requires reference to a standard written into the Constitution. Article I, § 8, contains a grant to the Congress of the power to permit patents to be issued. But, unlike most of the specific powers which Congress is given, that grant is qualified. The Congress does not have free rein, for example, to decide that patents should be easily or freely given. The Congress acts under the restraint imposed by the statement of purpose in Art. I, § 8. The purpose is 'To promote the Progress of Science and useful Arts. * * *' The means for achievement of that end is the grant for a limited time to inventors of the exclusive right to their inventions.

"Every patent is the grant of a privilege of exacting tolls from the public. The Framers plainly did not want those

The teachings of the Great Atlantic & Pacific Tea Co. case have been applied by this Court in Himes v. Chadwick, 9 Cir., 1952, 199 F.2d 100; Oriental Foods v. Chun King Sales, 9 Cir., 1957, 244 F.2d 909; Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1958, 251 F.2d 801; and Kwikset Locks v. Hillgren, 9 Cir., 1954, 210 F.2d 483, 486, where the Court said:

"A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination."

See also 35 U.S.C. § 103, set out in the margin.[8]

■ Applying the standard of invention as we understand it, we hold that to make the corners of the Killner rubber ring rounded so that it might be given the indefinite description of "doughnut shaped" may have been a "good idea" but was not invention.

Holding, as we do, that plaintiffs' patent is invalid, it is unnecessary to pass upon the question of infringement. Bergman v. Aluminum Lock Shingle Corp. of America, supra, and the cases cited therein at page 804.

## II. Unfair Competition.

monoplies freely granted. The invention, to justify a patent, had to serve the ends of science—to push back the frontiers of chemistry, physics, and the like; to make a distinctive contribution to scientific knowledge. That is why through the years the opinions of the Court commonly have taken 'inventive genius' as the test. It is not enough that an article is new and useful." [Footnote omitted.]

**8.** 35 U.S.C. "§ 103. Conditions for patentability; non-obvious subject matter
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In the second cause of action set out in their complaint, plaintiffs seek damages from Rubber Teck for alleged unfair competition. In this count, Rubber Teck is alleged to have (A) appropriated certain trade secrets of Rohr and Wolfe in the manufacture of a similar sealing device, and (B) to have imitated the trademark of plaintiffs by naming their device "Duo-Seal".

(A) Appropriation of Trade Secrets.

It appears from the evidence that Rubber Teck developed and sold to the public a one-piece seal which they marketed under the name "Duo-Seal." In this device the inner rubber ring was permanently attached or bonded to the metal washer on the inside diameter thereof. There was conflicting testimony as to the time this one-piece seal was developed and as to whether it was first developed by the plaintiffs or defendants. According to some of defendants' testimony, a one-piece seal was shown to plaintiffs in 1948, and was then rejected with the statement that it was "no good." On the other hand, plaintiffs' testimony was to the effect that they had made a one-piece seal in 1951 and 1952 prior to the marketing of a one-piece seal by the defendants. It was admitted by both sides that over a period the defendants had manufactured seals for the plaintiffs which were described in the patent in suit. It was also admitted that during this period there had been close cooperation between the plaintiffs and the defendants and that fairly frequent conversations were had between them, covering the manufacture of the seals. However, there was never developed at the trial any definite evidence of what "trade secrets" plaintiffs contended had been appropriated or used by the defendants.

When the general manager of Wolfe on the witness stand was asked by the Court to tell what trade secrets of plaintiffs had been appropriated by the de-fendants, he failed or was unable to set them forth. Notwithstanding this, plaintiffs contend that because of the close working relationship between plaintiffs and defendants, Rubber Teck came under a duty not to use information imparted to them so as to injure plaintiffs in their business. The principle upon which plaintiffs rely is well stated in E. I. Du Pont De Nemours Powder Co. v. Masland, 1917, 244 U.S. 100, 37 S.Ct. 575, 576, 61 L.Ed. 1016:

> "The word 'property' as applied to trademarks and trade-secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be."

The District Court had jurisdiction over this action for unfair competition because of the "pendent jurisdiction" granted to federal district courts by 28 U.S.C. § 1338(b). As will appear below, it is wholly unnecessary for us to reach the question of whether local or federal law is here applicable.[9] Justice Holmes' oft cited statement in the Du Pont case, quoted above, has been cited and followed by the California courts in Hollywood Motion Picture Equipment Co. v. Furer, 1940, 16 Cal.2d 184, 105 P.2d 299; and Riess v. Sanford, 1941, 47 Cal.App.2d 244, 117 P.2d 694, 695, where the Court said:

> "The controlling point of law involved is the accepted doctrine that no agent or employee having been intrusted in the course of his employment with secret and valuable information known only to his employer, may thereafter utilize this secret knowledge against the inter-

9. Both the problem and its academic nature are discussed in Maternally Yours v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538. See, especially, footnote 1 therein, at page 540.

ests or to the prejudice of his employer."

Plaintiffs have wholly failed to bring their case within either the Du Pont rule or the rule of the California cases. The confidential relationship *alone*, followed by competition from a former employee, does not in and of itself constitute unfair competition. Plaintiffs have not proven that there *were trade secrets* that *were* appropriated by Rubber Teck.

The District Court, on the basis of all of the evidence, found against the plaintiffs on this issue. These findings are set out in the margin.[10] There was ample evidence to support these findings.

(B) Defendants' Choice of a Trademark.

■ Plaintiffs claim also that defendants, in adopting the name "Duo Seal" for their device, wrongfully "copied, appropriated, duplicated and made colorable imitations of the trademarks * * * of plaintiff's sealing devices."

It appears that Wolfe had registered as trademarks in the United States Patent Office at various times the following: "LockOSeal" (1946), Termin O Seal (1953), Gask O Seal (1953), Bolt O Seal (1954), Valv O Seal (1954), Stat O Seal (1954), and Riv O Seal (1954).

The defendants, in marketing their one-piece sealing device, where the inner rubber ring was bonded to the inner surface of the metal washer surrounding it, used the name "Duo Seal".

Plaintiffs, in their brief before this court, cite 15 U.S.C.A. § 1114(1) (Lanham Act), which provides:

> "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services * * * shall be liable to a civil action * * *."

Whether the Lanham Act creates a federal cause of action when the alleged acts occur in or affect interstate commerce, what the limits of that cause of action are, and whether it is present in the instant case, need not be decided here;[11] for neither state nor federal law

10.
    "Findings
    * * * * *
    "18.
    "Plaintiffs claim that defendants are guilty of unfair competition alleging that defendants appropriated certain trade secrets obtained from plaintiffs while defendants or their predecessors were manufacturing the patented seals for the plaintiffs.
    "19.
    "During pretrial conference and discovery proceedings defendants attempted to ascertain from plaintiffs the trade secrets alleged to have been appropriated but were unable to obtain such information. During the trial officers of the plaintiff, The Franklin C. Wolfe Company, Inc., were asked what trade secrets were appropriated and they were unable to designate the trade secrets referred to in the complaint.
    "20.
    "No trade secrets of plaintiffs have been appropriated or misused by defendants. * * *"

11. Plaintiffs' second cause of action is entitled " * * * action for unfair competition" and jurisdiction is asserted under 28 U.S.C. § 1338(b); 15 U.S.C.A. §§ 1121, 1126(h) and 1126(i).
    Plaintiffs do not distinguish which of the above grants jurisdiction for the "appropriation of their trade secrets" and which grants jurisdiction for the "wrongful imitation of their trademark."
    It should also be pointed out that plaintiffs' complaint does not assert a claim for trademark infringement, but only for unfair competition. For the difficulties presented when such claims are joined, see Brooks Bros. v. Brooks Clothing of California, D.C.Cal.1945, 60 F.Supp. 442, and Maternally Yours v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538. For these much mooted points see Trade-Marks, Unfair Competition, and the Courts; Some Unsettled Aspects of the Lanham Act, 66 Harv.L.Rev. 1094, 1953.

would protect plaintiffs in their use of the "O-Seal" combination.

Defendants contend that except for the similarity in the use of the descriptive term "Seal", the resemblance between plaintiffs' marks and that of defendants ceases. They introduced a record showing that in the Patent Office, in addition to the seven trademarks filed by plaintiffs, as indicated above, there were 27 other marks registered over the years by different companies which contained the word "Seal".[12]

In Section 715 of the Restatement of Torts, a trademark is defined as set out below.[13]

As said in Q-Tips v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 146 (relied on by plaintiffs)—

12. Defendants' Exhibit "B"
Trademark Registrations

| Trademark | Registration No. | Registered | Page |
|---|---|---|---|
| LockOSeal | 576,868 | June 30, 1953 | 962 |
| Stat-O-Seal | 605,504 | May 3, 1955 | 963 |
| Riv-O-Seal | 605,503 | May 3, 1955 | 964 |
| TerminOSeal | 592,695 | July 20, 1954 | 965 |
| GaskOSeal | 592,432 | July 13, 1954 | 966 |
| Bolt-O-Seal | 605,502 | May 3, 1955 | 967 |
| Valv-O-Seal | 605,826 | May 10, 1955 | 968 |
| Aero-Seal | 418,083 | Dec. 4, 1945 | 969 |
| BellOSeal | 553,754 | Jan. 22, 1952 | 970 |
| DuoSeal | 416,870 | Oct. 2, 1945 | 971 |
| Faircoseal | 401,038 | Apr. 20, 1943 | 972 |
| Faircoseal | 506,013 | Jan. 25, 1949 | 973 |
| Flex-O-Seal | 389,356 | Aug. 5, 1941 | 974 |
| Lektroseal | 601,530 | Feb. 1, 1955 | 975 |
| LubOSeal | 566,653 | Nov. 11, 1952 | 976 |
| Wabcoseal | 520,261 | Jan. 24, 1950 | 977 |
| Sansealo | 116,604 | May 15, 1917 | 978 |
| Seal-O-Matic | 392,347 | Dec. 23, 1941 | 979 |
| Vapo-Seal | 246,414 | Sept. 4, 1928 | 980 |
| Seal-o-matic | 232,270 | Sept. 6, 1927 | 981 |
| Cerroseal | 313,933 | June 12, 1934 | 982 |
| Vitroseal | 574,970 | May 26, 1953 | 983 |
| Aero-Seal | 388,786 | July 8, 1941 | 984 |
| Duoseal | 426,108 | Dec. 17, 1946 | 985 |
| Frick Flexo-Seal | 358,268 | July 5, 1938 | 986 |
| Granoseal | 357,305 | May 31, 1938 | 987 |
| Koroseal | 336,849 | July 21, 1936 | 988 |
| Koroseal | 439,681 | July 13, 1948 | 989 |
| SpiroSeal | 384,093 | Jan. 7, 1941 | 990 |
| Viscoseal | 570,554 | Feb. 17, 1953 | 991 |
| Seal-o-matic | 315,348 | July 24, 1934 | 992 |
| Auto-Seal | 129,873 | Mar. 9, 1920 | 993 |
| Spyroseal | 175,807 | Nov. 13, 1923 | 994 |
| Thermo-Seal | 150,118 | Dec. 27, 1921 | 995 |

13. "A trade-mark is any mark, word, letter, number, design, picture or combination thereof in any form of arrangement, which

"(a) is adopted and used by a person to denominate goods which he markets, and

"(b) is affixed to the goods, and

"(c) is not, except as stated in §§ 720–722, a common or generic name for the goods or a picture of them, or a geographical, personal, or corporate or other association name, or a designation descriptive of the goods or of their quality, ingredients, properties or functions, and

"(d) the use of which for the purpose stated in Clause (a) is prohibited neither by legislative enactment nor by an otherwise defined public policy."

"* * * the dogma is that if the trade-mark term is merely 'suggestive' it may be a valid trademark. If it is 'descriptive' it will not do."

■ That a generic name, or a name merely descriptive of an article of trade cannot ordinarily be employed as a trademark has long been the rule. Canal Co. v. Clark, 1871, 80 U.S. 311, 20 L.Ed. 581, Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 1944, 143 F.2d 895.

This is the rule, both in this circuit, American Automobile Ins. Co. v. American Auto Club, 9 Cir., 1950, 184 F.2d 407, and in the California courts, Dunston v. Los Angeles Van & Storage Co., 1913, 165 Cal. 89, 131 P. 115; and see 47 Cal.Jur.2d § 6, Trademarks, etc.

In this case, both the patent in suit and the device manufactured by the defendants were definitely seals. Their main purpose was to prevent fluid leakage.

■ We hold that in this case the word "Seal" is a descriptive term describing both the device of plaintiffs and of defendants.

A disclaimer of the word "Seal" was included in two of the marks registered by other companies. "Aero Seal" and "Flexo Seal" and similar disclaimers as to the word "Seal" were included in two of the marks registered by plaintiffs, to-wit, "Termin O Seal" and "Gask O Seal".

On this point, the District Court made findings 21, 22, 23 and 24 as set out in the margin.[14]

We believe these findings are amply supported by the evidence.

### Cross-Appeal of Rubber Teck

There remains only to consider the cross-appeal of Rubber Teck from a judgment against them upon their counterclaim. Defendants, in addition to their denials in their answer, presented a counterclaim asserting that Wolfe, the exclusive licensee under the patent in suit, was advertising so-called "Gask O Seals", "Termin O Seals", and one-piece "Lock O Seals" as being patented by the patent in suit and as having a "patent pending", whereas these were not true facts. They prayed that the complaint be dismissed with costs and that a reasonable attorney's fee be awarded the defendants and that they recover from the plaintiffs the penalty provided in Section 292 of the Patent Act of 1952, 35 U.S.C. § 292.[15]

It appears that in plaintiffs' advertising in some places the following is contained:

"One of the Lock O Seal family, Patent 2396005, other patents pending."

The patent number given in this advertising is the patent in suit, and it appears that patents *"were pending"* which

---

14. "Findings

* * * * *

"21.

"Plaintiffs have designated and adopted as a trademark for the patented seals the name 'Lock-O-Seal.'

"22.

"Defendants have named their product 'Duoseal.'

"23.

"The term 'O-seal' had been used for many years by parties other than those represented in this litigation exemplified by such names as 'Aeroseal,' 'Bel-O-Seal,' 'Flex-O-Seal,' 'Auto-Seal,' and many others. Plaintiffs do not have any priority to use the 'O-Seal' combination.

"24.

"Plaintiffs have produced one instance in which there has been confusion be-

tween plaintiffs' seal and defendants' seal but the seals in question are sold by the thousands to a multitude of manufacturers. * * *"

15. 35 U.S.C. "§ 292. False marking (a)

* * * * *

"Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

"Shall be fined not more than $500 for every such offense."

have since then been granted upon "Termin O Seal" and "Gask O Seal".

The District Court found that there is no merit in defendants' counterclaim and further found that "The Court is not of the opinion that this is a case justifying the award of attorneys' fees."

The law is clear on the question of attorneys' fees, and was stated by this Court in Park-In-Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137, 142, that in patent cases attorneys' fees should be awarded only in extraordinary cases, "bottomed upon a finding of unfairness or bad faith." See 35 U.S.C. § 285, authorizing courts "in exceptional cases" to award reasonable attorney fees.

We agree with the findings of the District Court and the judgment is herewith affirmed.